IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

CONSOLIDATED
No.13-1087 (L)
No.13-1365
1:12 –cv-00664-LMB

---

WELLS FARGO BANK, N.A.

Plaintiff-Appellee

V.

BARBRANDA WALLS

Defendant-Appellant

---

Appealed from the United States District Court for the Eastern District of Virginia
Alexandria
Division

---

APPELLANT'S FORMAL BRIEF
--------------------------------------

Harry T. Spikes , Sr.#02493
1703 New Jersey Ave N. W
Washington, DC 20001
202 288-4175
Fax (301) 2486865
harryspikes@gmail.com
*Counsel for Appellant: Barbranda Walls*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1365__   Caption: __Barbranda Walls v  Wells Fargo Bank N.A.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Barbranda Walls__
(name of party/amicus)

_____

who is _____ __Appellant__ _____, makes the following disclosure:
      (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.   Does party/amicus have any parent corporations?   ☐YES ☑NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?   ☐YES ☑NO
     If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: __Harry T. Spikes, Sr Federal Bar# 02493__    Date: _____April 8, 2013_____

Counsel for: __Appellant Barbranda Walls_____

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on ____April 08, 2013____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Alison Feehan VSB 35225  1111 Main Street  Suite
800 Richmond VA  23219
Loc,Pifeiffer@KutakRock.com
Feehan@KuakRock.com Counsel for Wells Faro
Appellee

__Harry T. Spikes, SR.__
(signature)

_____April 08, 2013_____
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of **all** parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1087__     Caption: __Barbranda Walls v. Wells Forgo Bank__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Barbranda Walls__
(name of party/amicus)

_____

who is _____ __Appellant__ _____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                           ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                    ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: Harry T. Spikes, Sr. Federal Bar#02493          Date:    March 29, 2013

Counsel for: Appellant , Barbrnda Walls

## CERTIFICATE OF SERVICE
**************************

I certify that on    March 29,2013    the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Alison W. Feehan, VSB No. 35225  1111 East Main
Street, Suite 800 Richmond , VA. 23219
Loc.Pfeiffer@KutakRock.com   Alison.
Feehan@KuakRock.com  Counsel for Wells Fargo
Appellee

Harry T. Spikes, SR.                          March 29, 2013
      (signature)                                  (date)

07/19/2012                  - 2 -
SCC

# TABLE OF CONTENT

## Two Corporate Disclosure Statements

JURISDICTION OF THE COURT………………………………………………………………………1

ISSUESS BEFORE THE COURT……………………………………………………………………1

STATEMENT OF THE CASE…………………………………………………………………………1

STATEMENT OF THE FACTS………………………………………………………………………3

SUMMARY OF ARGUMEN……………………………………………………………………….4

APPLICABLE LAWS AND JURISDICTION CONTROL JUDICIAL CONTRARY DECISION………………4

ENFORCEMENT OF THE COLLECTION:………………………………………………………………5

ACCELERATION OF THE DEBT:…………………………………………………………………5

ATTORNEYS' FEES AVAILABLE WITHOUT LITIGATION………………………………………6

(c ) Reasonable Attorney Fees……………………………………………………………………6

"ATTO The Court's Quotes from the Deed of Trust:……………………………………………6

RNEYS' FEES AND OTHER COLLECTION COST……………………………………………………6

Not quoted is the following………………………………………………………………………7

INDEMNIFICATION ……………………………………………………………………………7

THE ASSIGNMENT OF RENT REMEDY WAS NEVER EXERCISED BY WFB………………………………7

BANK'S REMEDIES  UPON OCCURRENCE  OF DEFAULT:…………………………………………8

Bank Remedies upon Default………………………………………………………………………8

MISCELLANEOUS PROVISION: ……………………………………………………………10

SELECTION OF DISTRICT OF COLUMBIA COURTS AND LAWS……………………………………10

(" Applicable  Law; Conflict Between Documents…………………………………………11

FIRST PAGE OF THE PROMISSORY NOTE………………………………………………………11

CONSISTENT PROVISIONS OF THE DEED OF TRUST AND PROMISSORY NOTE  AS TO CHOICE OF APPLICABLE LAWS AND JURISDICTION……………………………………………………11

1

**STANDARDS OF REVIEW**..........................................................................................**12**

SUMMARY JUDGMENT :Fed. R. Civ .P. Rule 56.................................................12

ORDER OF DEFAULT JUDGMENT ON JULY 25, 2012..............................................14

SEWER SERVICE OF PROCESS...........................................................14

ORDER –ENTRY OF DFAULT JA274-275 -Dated 07/25/12..................................15

NO CONSIDERATION FOR PRO SE LITIGANT:..........................................15

Abuse of Discretion Providing Legal Advice to Plaintiff WFB:.................................15

**CONSENT ORDER of  08/31/2012 to set aside default**...................**16**

**CONCENT ORDER TO SET ASIDE DEFAULT**..............................................**17**

**Motion for Order to Transfer: 09/07/2012**..............................................**17**

HEARING ON MOTION TO TRANSFER SEPTEMBER 13, 2012..............................18

Abuse of Discretion in concluding, without evidence, venue was proper:..................18

**PERTAINING TO VENUE –ONLY MRS. WALLS WAS INCONVENIENT** .......................**21**

NO EXPLANATION FOR VENUE.....................................................................22

COLLECTION PROCESS:  ..............................................................................23

WFB'S VICE PRESIDENT BRIAN WERNER'S AFFIDAVITS BRIAN WERNER'S 09/12/12.....................23

EVEN WITHOUT THE AGREEMENT FOR SELECTION OF LAWS AND FORUM, THE DISTRICT OF COLUMBIA WAS THE PROPER FORUM FOR LITIGATION...24

Mrs. Walls consented to personal jurisdiction over her in the District of Columbia...........24

MRS. WALLS' VIRGINIA RESIDENCY WAS THE BASIS FOR THE EXERCISED OF JURISDICTION..25

**FEDERAL COURT'S JURISDICTION IN DIVERSITY CASES**...................................**26**

DIVERSITY OF CITIZENSHIP..............................................................................26

Limited Jurisdiction of the Federal Courts..........................................................27

THE COURT'S ORDER PRESENTED NO JUSTIFICATION FOR DENYING

2

MRS. WALLS MOTION TO TRASFER THE CAUSE TO THE DISTRICT OF COLUMBIA.........................27

THE COURT DID NOT RELY ON THE LAWS OF THE DISTRCT OF COLUMBIA IN HER DECISIONS AND MEMORANDUMS AND JUDGMENT ORDERS ...................................................................................................28

**DEFICIENCY BALANCE-POST FORECLOSURE**...........................................................**29**

CART BEFORE THE HORSE.......................................................................................................30

Ripeness.....................................................................................................................................33

ORDER OF 09/13/2012 DIRECTING MRS. WALLS TO FILE A RESPONSIVE PLEADING TO PLAINTIFF'S COMPLAINT WITHIN 14 DAYS...................................................................................35

MRS. WALLS COUNTERCLAIM **Order of 11/20/2012:**...............................................................36

**District of Columbia Court**.................................................................................................**37**

MRS. WALLS' RESPONSE TO WFB'S DISCOVERY REQUEST BROUGHT CLARITY TO THE GENUINE ISSUES OF DISPUTED FACTS.............................................................................................................41

**MRS. WALLS WAS DENIED THE 14 DAYS TO OPPOSE WEB'S MOTION TO COMPEL DISCOVERY BEFORE THE ISSUANCE OF THE DECEMBER 28, 2012 ORDER...........................................................41**

Mrs. Walls 'Answers to WFB 's Discovery request.................................................................43

MRS. WALLS' RESPONSE TO WFB'S DISCOVERY REQUEST BROUGHT CLARITY TO THE GENUINE ISSUES OF DISPUTED FACTS.............................................................................................................45

**MRS. WALLS WAS DENIED THE 14 DAYS TO OPPOSE WEB'S MOTION TO COMPEL DISCOVERY BEFORE THE ISSUANCE OF THE DECEMBER 28, 2012 ORDER...........................................................14**

**MOTION FOR ATTORNEY'S FEES FILED 01/11/2013 JA#219-320...........................................46**

CLOSED MIND-FIGHTING WORDS OF CONDEMNATION.............................................................47

**DISCOVERY REQUIREMENT –SUMMARY JUDGMENT MOTION OF 12/05/2012.......................47**

GENERAL OBJECTIONS TO ATTORNEYS' FEES..............................................................................49

3

Statute of Limitations:…………………………………………………….49

Conclusion……………………………………………………….50

FEEHAN'S VERIFIED AFFIDAVIT REGARDING FEES AND COST JA327…….50

Prayer for relied…………………………………………….50-51

Oral argument requested……………………………………..51

Conclusion:  …………………………………………………….50

TABLE OF CASES

Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,248,106 S.Ct.2505 .01 L.E.2d 202....................................................................................................................12

*Abbott Laboratories v. Gardner*, 387 U.S. 138, 148 (1967..........................32

***Bryant v. Bell Atl. Md. , Inc.,***. 288 F. 3d 124, 133 (4th Cir. 2003........................13

*Bremen v. Zapata Off-Shore Co.,* 407 U. S. 1, 407 U. S. 18 (1972)........................25

***Bragdon  v. Twenty-Five Twelve Assos. Ltd. P'ship. 856 A. 2d 1165, 1170 (D.C. 2004);...37***

***Burger King Corp. v. Rudzewicz***, 417 U.S. 462n.14 (1985),........................25-26

*Doolin v. Environmental Power Ltd.,* 360 A. 2d 493, 495 n.2 (D.C. 1976)....................50

Citing *e.g. YeGER V. Foster,* 406 P.2d 370 (Mon.1965*);.*........................*20*

*Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938)........................26

*Erie Ins. Exch. V. Heffernan,* 399 Md. 598, 620, 925 A. 2d 636, 648-49 (2007)..................26

Gen. Motors Acceptance Corp. v. Daniels, 303 Md. 254, 492 A. 2d 1306, ................37

***Hanson v. Denckla***, 357 U.S. 235, 532 (1958)........................26

***Hais v. Smith ,***547 A.2d 986,987 (D.C. 1988)........................37

*Johnson v. Long Beach Mortg Loan Trust 2001*-4, 451 F. Supp. 2d 16, 31 (D.D.C. 2006 .50

***King v. Indus. Bank of Washington,*** 747 A. 2d 151, 155 (D.C.1984)................13

*Lee v. Oregon* ,107 F.3d 1387 (9th Cir. 1997)........................32

*McGee v. International Life Insurance Co., at 355 U. S. 223-224*.............................*25,26*

*Mc Grill v. Hill*, 31 Wash. App. 542, 644 P.2d 680, 683 (1982)........................27

*Montoya v. Chao,* 296 F. 3d 952, 955 (10th Cir.  2002)........................27

*Orange St . Partners v. Arnold*, 179 F. 3d 656, 661 (9th Cir. 1999)........................27

*Richard A. Burgess v. Square* 3324 Hampshire Gardens Apartments, Inc.,  D.C. Court of Appeals    No. 96-cv-117 (April 3, 1997,) ...........................................................50

*Rhone-Poulenc Basic Chems, Co. v. Am Motorists Ins. Co. , 616 A 2d. 1195-96 (Del.1992)...37*

*United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.,* 190 F.3 ed. 1156, 1160 (10th Cir. 1999)..................................................................................................................................27

***Young v. Ridley***, 309 F. Supp. 1308, 1311 (D.D.C.1970)................................................................31

***Stacey Eden Blau v. Grzegorz Lukasz Nowicki*** CA No. 10-0024 (ESH) at p#2 foot note *1...**25**

*Thompson v. Horrell*, 158 S.E 633 (N.C.1968)..................................................................................20

*World-Wide Volkswagen Corp. v. Woodson, supra, at 444 U. S. 292;........................................25*

6

TABLE OF AUTHOTITIEES

Federal Statutes: Federal Rule of Civil Procedure

28 U.S.C. Section 1331: Diversity Jurisdiction……………………………………………………….1

U.S. Constitution- 5th and 14th Amendment……………………………………………………….19

28 U.S.C..Sec.1391(a) (1)…………………………………………………………………………17,21

R .Civ. P. Rule 12 (b) (6). …………………………………………………………………………13.35

Under Rule 8 (a) (2)……………………………………………………………………………………13

Fed. R. Civ .P. Rule 56……………………………………………………………………………………12


Authorities:

Restatement (Second) of Conflict of Laws §§ 36-37 (1971)………………………,,,,,,,……………………25

RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981).    … … … … … … … … … … … … . 3 7


 D.C. Code § 42-815(b),……………………………………………………………………………………30

District of Columbia Code  Section 42-186………………………………………………………….43

(DC Sec § 42-815.01),……………………………………………………………………..….29

D.C. Code  UCC 28:1-304 … … … … … … … … … … … … … … … … … … … . … . 4 3

DC Code Sec. 42-818……………………………………………………………………………….39,42

## JURISDICTION OF THE COURT

Jurisdiction of the Court is invoked pursuant to 28 U.S.C. Section 1331: Diversity Jurisdiction

without federal Question.

ISSUESS BEFORE THE COURT

1. Whether Wells Fargo Bank N.A., Appellee (WFB) is entitled to attorneys' fees from
   Appellant ("Mrs. Walls ") for civil action brought in the Federal District Court for the
   Eastern Division of Virginia?

2. Whether Wells Fargo, Appellee (WFB) is entitled to attorneys' fees from Appellant
   (" Mrs. Walls ") for civil action brought in the Federal District Court for the Eastern
   Division of Virginia ( District Court) on June 18, 2012, from December 28, 2012 until and
   including March 08, 2012?

3. Whether WFB breached the contract between Mrs. Walls and WFB by filing the lawsuit
   in the District Court rather than in the District of Columbia when, by agreement, the
   parties mutually selected the District's Forum and laws to governed any dispute deriving
   under the contract?

4. Whether WFB was required to exhaust the non-judicial remedies under the contract and
   the Laws of the District of Columbia as a condition prerequisite to bringing suit under
   the agreement?

### STATEMENT OF THE CASE

On November 4, 2005, Plaintiff Walls executed a Promissory Note with Wachovia Bank , herein

(WFB) for real property, 585 Columbia Road, NW Washington DC 20001; Square 3051, Lot 174,

1

herein ("The Property").The principal of the Promissory Note, ("The Note ") herein, was $600,000.00, at an annual interest rate of 6 .49%, with a default rate of 3%,    repayment amount of $5,256.93 commencing on  December 4, 2005 with a maturity date  of November 5, 20010. Between November 04, 2005 and November 05, 2010, WFB initiated non-judicial foreclosure on the property. The sale divested Mrs. Walls of all legal and equitable rights and obligations to the property. The purchaser failed to ratify the sale. Six months later, WFB voluntarily, without Mrs. Wall's request, surrendered the property to Mrs. Walls without a new contract. Much of the delinquent taxes and mortgage payments occurred during the six month of divesture. The verbal agreement between Mrs. Walls and WFB was that Mrs. Walls would improve the property to produce rental income and from that income WFB would receive mortgage payments. No new or alternate Debt Instruments were executed at that time.

On June 18, 2012 Wells Fargo (WBF) filed in the United States District Court for the Virginia, Alexandria Division, a Civil Complaint-diversity action- against Mrs. Walls for default on the Promissory Note (Note) and the Deed of Trust (DOT).The Complaint sought judgment in the amount of $805,131.00., plus attorney's fees and cost on the unpaid principal of $600,000.00 at a rate of 9.49%.

 The District court issued several orders against Pro se Defendant Appellant Walls.  Among the orders are two appealable orders-judgments issued by the District Court: summary judgment in favor of WFB, issued on December 28, 2012; JA222, with judgment entered upon said order .See JA at 355-359-Cross reference at JA227; order March 04, 2013, See JA394- Cross Reference at JA266; with a supporting memorandum, See JA375-393; Cross Reference at  JA247

to 265, and order of 01/16/2013, which affirmed the order of December 28, 2012. JA 241 to

242. Timely appeals were taken as to both orders-judgments. See JA232 to 246 and JA267. Dec.

28, 2012 order was appealed on (01/15/2013; order of 3/04/13 was appealed on 01/15/2013.

See JA395.

STATEMENT OF THE FACTS

Wells Fargo and Mrs. Walls agreed under the Promissory Note, JA268-273 and Deed of Trust

and Assignment of Rent, JA 4-14 that the laws of the District of Columbia would apply to any

dispute deriving from the Promissory Note and the Deed of Trust ("Debt Instruments"). The

Debt Instruments set forth non-judicial procedures for all the remedies that would normally be

sought judicially. The laws of the District of Columbia governing disposition of real property

provide a Non--judicial foreclosure process with the statutory intent to avoid litigation cost. The

agreement required exhaustion of the combination of the Debt Instruments' provisions and the

District of Columbia Laws; non-judicial *collection* action and non-judicial foreclosure action.

Both debt Instruments and the Statutory Provisions mandated that the non-judicial process

would precede any judicial action on the Debt Instruments that secure the District of Columbia

Real Property. On June 18, 2012 WFB filed a lawsuit against Mrs. Walls for default on the Debt

Instruments. The complaint was filed under diversity jurisdiction with the U.S. District Court for

Virginia rather than in the District of Columbia. The Complaint sought monetary judgment,

attorney's fees and cost, for the satisfaction of the Debt Instruments. Every remedy sought in

the lawsuit was available under the provisions of the Debt Instruments and laws of the District

of Columbia which provided the least expensive non-judicial process for the parties to avoid

3

unnecessary cost and fees and to provide the Note holder with means for quick procession of the property .

WFB, after filing the lawsuit on June 18, 2012 in the Virginia Federal District Court, filed non-judicial foreclosure sale action against Mrs. Walls in the District of Columbia. The foreclosure auction sale of the property was consummated on September 18, 2012, for $575,000.    The combination of the amount of money sought by WFB on the Debt Instruments in the Virginia Action and the amount on the Payoff Statement to protect the property from auction sale was substantial; over one million dollars on a $600,000 debt. Mrs. Walls could not pay the amounts to prevent foreclosure sale of the property. The Virginia District Court entered two appealable judgment-orders. Both of the orders awarded attorneys and judgment for the alleged principal of the Debt Instruments with interest and cost. Both orders were timely appealed to this court. The Orders are at JA#266, entered 03/04/13, awarding WFB  the ("total cost  of $251,264.08 consisting of $99,094 in attorneys' fees and $152,529.89 in cost ")  , referring (Dkt.49) which is found at JA219 to 320, which is WFB's  Motion for Attorney's Fees. The order was accompanied by the Court's Memorandum. See JA247-266. See the Court's Summary Judgment Order, JA220-227 issued December 28, 2012.  The content of the orders will be discussed separately.

## SUMMARY OF ARGUMENT

APPLICABLE LAWS AND JURISDICTION CONTROL JUDICIAL CONTRARY DECISION

For mutual consideration the parties selected the District of Columbia laws and forum for contractual breach and dispute under the Debt Instruments, the Deed of Trust and the Promissory Note. The Debt Instrument(s) is the contract between WFB and Mrs. Walls. WFB's

4

decision to file the lawsuit in the District Court in Virginia rather than the District of Columbia

was an act of bad faith, a breach of the contract and violation of District of Columbia Implied

Covenant of good faith and fair dealing. The contract required WFB to exhaust the remedies in

the contract and the District of Columbia non-judicial foreclosure laws before filing a lawsuit on

the Debt instruments that secured the real property. Therefore, any attorneys' fees deriving

from the District this action must be denied WFB. All remedies sought by the District Court

action  were available to WFB non-judicially. All issues raised in the lawsuit were already

conceded by Mrs. Walls. The lawsuit was not necessary. The lawsuit was initiated for two

purposes: (1) to create fees and cost; (2) and to destroy Mrs. Walls' financial ability to save the

property from foreclosure sale planned by WFB to take place on September 18, 2012.

The non-judicial remedies available to WFB  are:

ENFORCEMENT OF THE COLLECTION:

(a)    "**Waiver of Grantor's Rights**. To the fullest extent permitted by law, Grantor
waives the benefit of all laws now existing or that hereafter may be enacted
providing for (i) any appraisement before sale of any portion of the Property, (ii) in
any way extending to time for the **enforcement of the collection** of the Note or
the debt evidenced thereby or any other Obligations, and any rights to hearing
prior to the exercise by Bank of any right, powers, or remedy herein provided to
the Bank." See JA8-9(Deed of Trust)("DT").

ACCELERATION OF THE DEBT:

(a) "To the full extent Grantor may do so, Grantor agrees that Grantor will not at any
time Insist upon, plead, claim or seek to take the benefit or advantage of any law
now or hereafter in force providing for any exemption (including homestead
exemption), appraisement valuation, stay, *extension or redemption,* and Grantor
for themselves and their respective heirs, devisees, representatives, successors
and assigns, and for any and all persons claiming any interest in the Property, to

5

the extent permitted by law, **hereby waive** and release all rights of valuation, appraisement, redemption, stay of execution, the benefit of all exemption laws, notice of election to mature or declare due the whole of the secured indebtedness and marshaling in the event of foreclosure of the liens hereby created. Grantor further **waives** any and all **notices** including, without limitation, **notice of Intention to accelerate and of acceleration of the Obligations.**" JA 9, 1st paragraph.("DOT")

## ATTORNEYS' FEES AVAILABLE WITHOUT LITIGATION

(c ) **Reasonable Attorney Fees**: "Grantor agreed to hold the Bank harmless for any **reasonable attorney fees**. "Indemnification: Grantor shall protect Indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages, penalties, fines, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Damages') Imposed upon, incurred by or asserted or assessed against Bank on account of or in connection with (i)." JA at 9, 3rd paragraph. ("DOT")

"**ATTORNEYS' FEES AND OTHER COLLECTION COST**. Borrower **shall** pay all of Bank's reasonable expenses actually **incurred to enforce or collect** any of the Obligations including, without limitation, reasonable arbitration, paralegals' attorneys'  and expert's fees and expenses, **whether incurred without the commencement of a suit,** in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceedings." See Promissory Note at JA378.

The Court's Quotes from the Deed of Trust:

**Not quoted is the following**: "However, Grantor's indemnity shall not apply to any negligent or intentional act of Bank which takes place after foreclosure or satisfaction of this Deed of Trust…"

JA8. Also see the "Waiver of Grantor's rights" under which all rights are waived as to the non-judicial collection process.JA8.

"INDEMNIFICATION.    Grantor shall protect, indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages. Penalties, (including, without limitation, reasonable attorney's fees and expenses) (collectively, (" Damages") imposed upon, incurred by or assessed against Bank on account of or alleged failure of Grantor to comply with any of the terms of, or the inaccuracy or breach of any representation in, the Loan Document;..." JA378. Court's order of March 05, 2013.

## THE ASSIGNMENT OF RENT REMEDY WAS NEVER EXERCISED BY WFB

(d ) Assignment of Rents:  "Grantor hereby absolutely assigns and transfers to Bank all the leases, rents, issues and profits of the Property (collectively "Rents"). Although this assignment is effective immediately, so long as no Default exists. Bank gives to and confers upon Grantor the privilege under a revocable license to collect as they Become due, but not prior to accrual, the Rents and to demand, receive and enforce payment, give receipts, releases and satisfactions, and sue in the name of Grantor for all such Rents. Grantor represents there has been no prior assignment of leases or Rents, and agrees not to further assign such leases or Rents." JA9. ("DOT")

## BANK'S REMEDIES UPON OCCURRENCE OF DEFAULT:

.( E ). " **Upon any occurrence of Default**. The license granted to the Grantor herein **shall** be automatically revoked without further notice to or demand upon Grantor, and Bank shall have the right in its discretion, **_without notice_**, by agent or by receiver appointed by a court, and without regard to the adequacy of any security for the Obligations, (i) to enter upon and **take possession of the Property,** (a) notify tenants, subtenants and any property manager to pay Rents to Bank or its designee , and upon receipt of such notice such persons are authorized and directed to make payment as specified in the notice and disregard any contrary direction or instruction by Grantor, and (iii) in its own name, **sue** for or otherwise collect Rents, including those past due, and apply Rents, less cost and expenses of operation and collection, including attorneys' fees, to the Obligations in such order and manner as Bank may determine or as otherwise provide for herein. Bank's exercises of any one or more of the foregoing right shall not cure or waive any Default or notice of Default hereunder" JA 9-10. ("DOT")

(F). **Bank Remedies upon Default**: "Remedies of Bank on Default... ...are available , without limitation , (i) , **_acceleration of the maturity_** of all payments and obligation, ........... (ii) ...take immediate possession of the Property ..and manage, control or lease the same to such persons and at such rental as it may deem proper and collect and apply rents to the payment of : (a) the Obligations, together with all costs and attorney's fees ; (b) all impositions and any other levies, .., (c ) the cost of all alterations, repairs, replacements and expenses incident to taking and retaining possession of the Property and management and operation thereof; all in such order or priority as Bank in its sole discretion may determine. The taking of possession shall not prevent concurrent or later processing for the foreclosure sale of the Property: (iii) Bank may apply to any court of competent jurisdiction for the appointment of a receiver for all

8

purposes including, without limitation, to manage and operate the Property or any part thereof, and to apply the Rent therefrom as hereinabove provided. In the event of such application, Grantor consents to the appointment of a receiver, and agrees that a receiver may be appointed without notice to Grantor,..; (iv) Upon application of Bank, Trustee shall sell the Property and pay the proceeds of sale according to the following terms and conditions: (a) Trustee shall foreclose upon this Deed of Trust and sell the Property, or any part or the Property, at public sale conducted according to applicable law (referred to as Trustee's Sale"); (b) Trustee shall provide such notice and shall advertise *a* Trustee's Sale in the manner required by applicable law; (c) Trustee shall conduct additional Trustee's Sales as may be required until all of the Property Is sold or the Obligations are satisfied; (d) Trustee, may receive bids at Trustee's Sale from the Bank and may accept from Bank as successful bidder, credit against the Obligations as payment of any portion of the purchase price; (e) Trustee may receive a reasonable fee for Trustee's services hereunder, not to exceed the maximum fee allowed by applicable law*; and Trustee shall apply the proceeds of Trustee's Sale, first to any permitted Trustee's fee, second to expenses of foreclosure and sale, third to the Obligations, and any remaining proceeds as required by law;* ..Bank may elect to foreclose upon any Property that is fixtures under law applicable to foreclosure of interests in real estate or law applicable to personal property. JA10 -11("DOT").

MISCELLANEOUS PROVISION:

9

(g ). "**Miscellaneous Provisions**. Grantor agrees to the following; (i) All remedies available to Bank with respect to this Deed of Trust or available at law or in equity shall be cumulative and may be pursued concurrently or successively. No delay by Bank in exercising any remedy shall operate as a waiver of that remedy or of any Default. Any payment by Bank or acceptance by Bank of any partial payment shall not constitute a waiver by Bank of any Default…" JA11.("DOT")

## SELECTION OF DISTRICT OF COLUMBIA COURTS AND LAWS.

(h) **Selection of Applicable Law and Jurisdiction** "The Deed of Trust shall be governed by and construed under the laws of the jurisdiction where this Deed of Trust is recorded: (x) Grantor by execution and Bank by acceptance of this Deed of Trust agree to be bound by the terms and provisions hereof). FINAL AGREEMENT. This Agreement and the other Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten and oral agreements between the parties" JA12. ("DOT")

(l)    (" **Applicable Law; Conflict Between Documents** . "The Note and , unless otherwise provided in any other Document, the other Loan Documents **shall** be governed by and construed under the laws of the state in **Bank's address on the first page hereof** without regard to the state's conflict of law principles. If the terms of this Note

10

should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note **shall control**" ) See Promissory Note at JA273.

**FIRST PAGE OF THE PROMISSORY NOTE**

_(II) Wachovia Bank National Association 1425 K Street NW Washington, DC 20005 (Hereinafter referred to as the Bank) See promissory Note at page one.

**20. CONSISTENT PROVISIONS OF THE DEED OF TRUST AND PROMISSORY NOTE AS TO CHOICE OF APPLICABLE LAWS AND JURISDICTION**

"This Deed of Trust **shall** be governed by and construed under the laws of the jurisdiction where this Deed of Trust is recorded: (x) Grantor by execution and Bank by acceptance of this Deed of Trust agree to be bound by the terms and provision thereof" See Deed of Trust at page. JA12. ) The Deed of Trust was executed in the District of Columbia by the parties,

Deed of Trust document (DOT) at page 9 as was the Promissory Note at page

one on November 4, 2005. The real property is located in the District of Columbia.

A District of Columbia Notary confirmed the execution of the Debt Instruments; namely Maxine Hall Mowert, Notary Public of the District of Columbia. See JA12 The Contract-Deed of Trust-was recorded in the District of Columbia. See JA2, paragraph#10.(WFB's Complaint") Mrs. Walls waived her rights to a hearing for relief upon default on the mortgage See JA#8-9. Acceleration rights waiver: See JA9, first paragraph. She also waived her rights to contest the collection of

11

Attorney's fees in the non-judicial collection process. See JA#9. 3rd paragraph. Mrs. Walls

virtually gave the Bank, WFB card blank to exercise all of the non-judicial rights that were and

reasonable and unreasonable without recourse.  See JA 9-10-11 and 12.


## STANDARDS OF REVIEW

SUMMARY JUDGMENT :Fed. R. Civ. .P. Rule  56

Before ruling on a motion for summary judgment, the trial court's obligation is to read the

evidence most favorably for the nonmoving party to see if there is a "genuine issue of material

fact" to be resolved. Only if there is none does the court then decide whether the movant

deserves judgment as a matter of law. The material issues of each case are identified by

substantive law. As the United States Supreme Court has explained, "[o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,248,106

S.Ct.2505 .01 L.E.2d 202.

MOTION TO DISMISS: Fed. R .Civ. P. Rule 12 (b) (6).  The purpose of Rule 12 (b) (6) test the

sufficiency of the pleading and not to resolve contests surrounding the facts, the merits of a

claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F 3d 480, 483 (4th

Cir.2006). Under Rule 8 (a) (2) of the Federal Rules of Civil Procedure, a complaint must contain

a " short and plain statement of the claim showing that the pleader is entitled to relief."

## **ARGUMENT**

The Court's Order of December 28, 2002 must be set aside for reasons stated herein. Summary judgment must not be entered where there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242,248,106 S.Ct.2505 .01 L.E.2d 202. The Court must view the record in the light most favorable to the non-moving party. See **Bryant v. Bell Atl. Md. , Inc.,**. 288 F. 3d 124, 133 (4th Cir. 2003. ), cited at JA356 Doc#39. By admission prior to June 18, 2012, Mrs. Walls had declared default on the mortgage; debt instruments. The court concluded the same.JA356; and further, that the  subject property was in foreclosure proceeding. The court deeded WFB's discovery request had not been answered by Mrs. Walls and used the same as admission for summary judgment purposes, that Mrs. Walls failed to pay WFB on the Note upon demand, JA357, failed to pay attorneys' fees; that the sum of $672,349.94., plus attorneys' fees and cost is due WFB under the Debt Instruments. The issued Order states: "*ORDERED that plaintiff's Motion for Summary Judgment (DKT. No. 32) be denied. Given this disposition, plaintiff's Motion to Compel (Dkt. No.35 )is moot and therefore DENIED*"

The ORDER chose to exclude material facts that would have defeated the summary judgment motion.


WFB's June 18, 2012 complaint was insufficient to support the issuance of summary judgment.

The Complaint sought and obtained summary judgment without a fees schedule or an amount certain.JA1-3

13

The cause was filed in bad faith and breach of the contract between the parties. WFB was bounded by the selection of forum, laws and non-judicial and remedies. DOT at JA12,JA273

The parties were legally and equally bound by the terms of the contract with legal consequences for its breach. ***One who signs a contract is bound by a contract which he has an opportunity to read whether he does so or not*** See *King v. Indus. Bank of Washington,* 747 A. 2d 151, 155 (D.C.1984) at 155. The contract was knowing and maliciously breached by WFB for profit in the form of attorneys; fees and cost. Mrs. Walls' counter claim alleged breach of contract and disclosed the financial contradictions between the complaint's prayer for judgment and the Payoff statement amount.JA47.Ppreceding by several events were used by the court to support the issuance of summary judgment.

ORDER OF DEFAULT JUDGMENT ON JULY 25, 2012: The Court Order, of July 25, 2012, demanded WFB to seek a default and default judgment against Mrs. Walls.JA274-275. Mrs. Walls was not properly served. See Mrs. Wall's affidavit, JA25, and Mr. Walls' affidavits. JA 16.

SEWER SERVICE OF PROCESS

WFB obtained a default and default judgment based on sewer service.

The Affidavit of Service and Summons submitted by Wells Fargo were false. The Summons and Complaint were not served upon Mrs. Walls and Mr. Walls as claimed by Wells Fargo. See Affidavit of Service JA15. The Complaint and Summons were not (" Posted on the front door or other such entry as appears to be the main entrance"). Based on the false affidavit, WFB REQUEST FOR ENTRY OF DEFAULT. JA#18-20 (Doc 8. ). Based on the alleged service, the court entered a default against Mrs. Walls. JA22. ( Doc# 9- 08/21/12-P 1 of 1 ID45) JA22. Mrs. and Mrs. Walls motion the court to vacate the default asserting the affidavit of service false. See

14

JA23-24, motion to vacate default; Mrs. Walls's Affidavit JA#25 and Mr. Walls's affidavit JA26. ,

Mrs. and Mr. Walls contested: " It appears that the false of affidavit of Plaintiff is a tactical

move to bring the  Defendant into the case. There have been no attempt on part of Defendant

to avoid service" (Doc.10 -10-1-3; 08/21/12 P# 1 of 2 ID 46) See JA23-24, Walls' motion to

vacate default; JA25 See  Walls' Affidavit; JA26 Hal Walls' Affidavit.

## ORDER –ENTRY OF DFAULT JA274-275 -Dated 07/25/12

        The order deemed service proper when it was not. The Walls were never served.

The order deemed all elements for judgment was present in the complaint when they were not.

The complaint brought action on both the Note and the DOT. See JA4 (Note 6&7 and the

Promissory Note at JA268-273).

### NO CONSIDERATION FOR PRO SE LITIGANT:

1. Abuse of Discretion Providing Legal Advice to Plaintiff WFB:

The Court's decision to Order WFB to motion for default and default judgment was equivalent

to providing legal counsel and legal advice to WFB. The orders were enforcement directions

with adverse consequences had WFB not preceded as ordered. The Language was hostile and

prejudicial:

15

*("ORDERED that plaintiff immediately obtain a default from the Clerk pursuant to Fed.R.Civ.*

*P.55 (a) and it is further ORDERED that promptly after obtaining an entry of default...")*

The enforcement words (*"Immediately and promptly"*) implies a rush to judgments without the necessary facts. WFB was legally advised and demanded by the Court to file under Fed. R. Civ.P.55 (a). The ORDER left WFB without discretion.  JA274-275. The Parties Consent to avoid the default was always available prior to the Court's ORDER. JA28

A default is a selection to be made by either party and should not be ordered by the Court with instruction to do so.

**CONSENT ORDER of  08/31/2012 to set aside default** :WFB prepared a consent order which was granted by the court . The order set aside the default and granted Mrs. Walls until and including September 07, 2012 to answer the complaint.   JA28.   This gave Mrs. Walls approximately Seven Days to file a response.  If service was deemed improper on 08/31/12, Mrs. Walls was entitled to 20 days, from 08/31/12, to provide a response.

**CONCENT ORDER TO SET ASIDE DEFAULT**

By Order of 09/05/2012, as to Mrs. Walls' motion to vacate the Default, WFB, was directed to file a response opposition. Email contact was permitted. A motion hearing was set for September 14, 2012. JA 30.

**By Order of 09/05/2012,** as to Mrs. Walls' motion to vacate the Default, WFB, was directed to file a response opposition. Email contact was permitted. A motion hearing was set for September 14, 2012. JA 30.

### Motion for Order to Transfer: 09/07/2012.

On September 07, 2012 Mrs. Walls filed with the Court a motion for an order to transfer the cause from the Virginia Federal District Court to the District Court for the District of Columbia. The motion was not a responsive pleading as ordered by the Court on 08/31/2012. However, the filing was timely as filed on 09/07/2012 as ordered. See JA30 for timely response and the motion, JA209-211. By law, a Defendant is entitled to file a dispositive motion in lieu of a responsive pleading. Judicial economy favors such pleading. Early disposition of the cause by way of pleading is favored by the Court. Mrs. Wall's memorandum in support of the Motion was extensive. JA31-36. The Cause could have been originally brought in the District of Columbia, the litigation forum of the parties contractual choosing under JA31. Venue was challenged as explained under Title 28 U.S.C Sec.1391 (a) (1). Mrs. Walls stated "Plaintiff has the obligation to institute the action in a permissible forum and thus bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52,56 (D.D.C. 2003). Here, Plaintiff (rely) relies on the provisions in support of venue in the Virginia Federal District Court-Title 28 U.S.C. Sec. 1391 (a) (3). Such reliance without basis is insufficient. The resident of Defendant, in the instant case, standing alone, is insufficient for venue. The contract between the parties was executed in the District of Columbia and the real property is located in the District of Columbia. Because the collateral property is located and situated in the District of

17

Columbia, the laws of the District of Columbia will govern any and all common law and substantive law and procedural rights as to the foreclosure process. This is particularly so as to any injunctive relief as to the pending foreclosure proceedings" JA32.

<u>HEARING ON MOTION TO TRANSFER SEPTEMBER 13, 2012</u>

 The District Court Judge held a hearing on September 13, 2012 on Mrs. Walls' motion to transfer. Summary of the six pages Transcript is as follows: Mrs. Walls residency in the State of Virginia persuaded the court to deny the motion to transfer. See Tr. At P 2, l:21 to 25.

**ABUSE OF A PRO- SE LITIGATN:  As to Mrs. Walls motion hearing to transfer the Cause to the District of Columbia (MO JA376,.the court took judicial notice that Mrs. Walls, as a Pro Se litigant, enjoyed relaxation of time limitations for responding to motions.**

 <u>Abuse of Discretion in concluding, without evidence, venue was proper:</u>

The Court: "**There is absolutely no argument you can possible make that this is an inconvenient forum**" JA351  TR:L1-8.

The conclusion was a rush to judgment and a denial of due process and equal protection of the law. The court made the statement before making an inquiry of either party. The terms of the Debt Instruments were not considered for the parties selection of Venue and Choice of law and jurisdiction. Why WFB chose the District Court in Virginia rather than that of the District of Columbia was an inquiry the court never made.

JA352 (TR. L:14-19). The court concluded the Attorney Harry T. Spikes, SR. provided counsel to Mrs. Walls as to the Virginia Laws. Counsel was present for the Courts' inquiry for clarity to

18

dispel the erroneous assumptions. The Court accused Counsel of  ("ghost practice") JA352 ; TR.

20-25, and refused Counsel the opportunity to explain that he only gave legal advice to Mrs.

Walls for the District of Columbia action and the Mr. Walls assisted his wife, Mrs. Walls, in all

respects to the property, as she, Mrs. Walls , admitted in court. JA 350 and JA352-TR L 7-8. The

record reveals Mrs. Walls was intimidated by the Court. The intimidation  was exacerbated by

the Court's statement: ("You don't know where you signed the note?") *Ld, L.12-21, and

followed the statement with ("It makes no difference where it was signed")*. The language used

by the Court closed any possibility of the Court's consideration of the full content of the Debt

Instruments' choice of law, jurisdiction and venue and the parties mutual choice for the same.

Throughout the process, the court denied Mrs. Walls the consideration due to a Litigant, Pro Se

or not Pro se. Such was an abuse of discretion.  Denial of the Motion to transfer was an abuse

of discretion and violation of Mrs. Walls Due Process and Equal Protection rights under the U.S.

Constitution- 5th and 14th Amendment.

 By memorandum (Doc.17 09/12/12/ P1-7 ID#70) WFB opposed Walls' motion to transfer. See

Memo. , at JA 39-45. The Memorandum falsely represented that Mrs. Walls was not paying

taxes. JA39. WFB set forth the standard legal requirements in opposing the motion. However,

WFB was well aware that the requirements (legal authorities presented by WFB) were not

controlling; the contractual agreement was controlling in the instant cause. The Parties had

selected the District of Columbia and its laws for non-judicial and judicial resolution for contract

and property related action and disputes. In detail, WFB made the following assertion but never

really challenge Mrs. Walls' assertion that jurisdiction of the Virginia Court was lacking. WFB

argue VENUE and omitted the contractual agreement for the selection of the District of

19

Columbia Laws and non-judicial proceedings and remedies. At the time of WFB's opposition to Mrs. Walls' motion to transfer, September 12, 2012, the non-judicial foreclosure against the property was to take place within six days. Further, at that time, Mrs. Walls was current on the property taxes and had offered payments and a payment plan to WFB's Vice President, Brian Werner, on August 22, 2012, which WFB refused to accept. See JA111. At Mrs. Walls's request, Brian Werner emailed Mrs. Walls a payoff statement which exaggerated the amount owed with speculative cost and attorney fees. See JA109. Brian Werner presented several affidavits in which neither one asserts that WFB sought payments from Mrs. Walls of which she refused. See Brian Werner's Affidavits JA44-45,133-135,-178. At page four of the opposition, WFB argued that Mrs. Walls' answer to the complaint should precede a decision on a motion to transfer, Citing *e.g. YeGER V. Foster*, 406 P.2d 370 (Mon.1965*); Thompson v. Horrell*, 158 S.E 633 (N.C.1968), and asserted that Mrs. Walls show the nature of her defense. *WFB knew, continued litigation would defeat the motion to transfer.* The assertion ignored the contractual agreement between the parties selecting the District of Columbia for the choice of law, the place for the application of the law as is the place where the property is located. WFB's opposition to the transfer motion, Doc17 JA39-43 was filed on 09/12/12; the very next day, September 13, 2012, the court issued an order denying Mrs. Walls' motion to transfer. JA 212. The order denied the motion without explanation and consideration of the Contract between WFB and Mrs. Walls.

Civil Action had not been filed by Mrs. Walls against Wells Fargo on September 13, 2012, but WFB had initiated the Non-Judicial Foreclosure process in the District of Columbia. The foreclosure action and the Virginia Civil Action existed simultaneously. The Virginia action was in its infancy. No prejudice would have visited WFB by the grant of the motion to transfer; yet,

20

as has been shown, substantial hardships and prejudice has visited Mrs. Walls due to the denial of the motion.

### PERTAINING TO VENUE –ONLY MRS. WALLS WAS INCONVENIENT

As an employee in the District of Columbia, Mrs. Walls travels there daily during the week. After DC Court matters, Mrs. Walls enjoys ten minute walk to her place of employment E and 6th Street N.W. Washington, DC.

THE COMPLAINT: VENUE: BAD FAITH:  The District of Columbia was the most convenient forum for all parties-and litigation.     The law firm of **Kutak Rock LLP** is located in the District of Columbia at 1101 Connecticut Avenue, Suite 1101, Phone number , 202-828-2400, a ten minute subway ride to the DC Federal District Court. The firm's Richmond Virginia Office is a two hour drive to the Virginia Federal District Court. Mrs. Wall's employment is in the District of Columbia where the debt instruments were executed and the location of the subject property. WFB Counsel travel from the Richmond Office to the District Court is expensive with a two and one half hour travel time in morning rush hours.

NO EXPLANATION FOR VENUE:  WFB Complaint was factually deficient  for  venue under 28 U.S.C..Sec.1391(a) (1) which requires Plaintiff to provide authority and facts for venue.

The required explanation for venue would have included disclosure of the selection of venue and laws by the parties and the close proximity of the Plaintiff's DC Firm to the DC Federal District Court. This would have been sufficient for the grant of Mrs. Walls' motion to transfer.

WFB withheld the vital information from the Court. Pro se Plaintiff, Mrs. Walls, was unable to adequately make the required presentation. The non-disclosure by WFB was an act of bad faith.

## WFB'S COMPLAINT CONTAINES WILFUL AND KNOWN INACCURACIES AND OMISSIONS OF RELEVANT MATERIAL FACTS

The complaint reference the provisions of the Promissory Note as to Mrs. "Walls will pay all cost of collection or any similar type of cost, attorney's fees and court cost upon default." JA 2 at 9. The material omitted facts are that (1)  WFB filed the complaint before commencing the collection process;(2) the Debt Instruments, as stated by WFB required Mrs. Walls to pay *cost of collection*. Omitted is the material fact that the Debt Instruments, Promissory Note, provides non-judicial collection process. The complaint referenced the Deed of Trust and Assignment of Rent and identifies the debt instruments were executed in the District of Columbia. The omitted material Facts are (3) the Deed of Trust (DOT) provides WFB with unfitted rights to collection non-judicially and deprives Mrs. Walls of the rights to protest or resist the described means and methods of collection upon her default on the mortgage payments, and (4) that both debt instruments, the DOT and the Promissory note, by agreement of the parties for financial considerations, selected the District of Columbia as the litigation forum and the applicable choice of Laws of the District of Columbia. Had WFB explained the four omissions of material facts to the Court at the September 13, 2012 motion to transfer hearing, the Court would have granted Mrs. Walls Motion to transfer the cause to the District of Columbia Federal District Court. Failure to do so was an act of Bad Faith by WFB.

COLLECTION PROCESS:  WFB misleadingly asserted that it engaged in the collection process to obtain the delinquency payments from Mrs. Walls. WFB asserted that **"Barbranda Walls has refused and failed to pay Wells Fargo the sum due."**  See JA2, complaint at paragraph 12, 13 and 14.  The Collection process is set forth in  DOT JA8-9 . WFB submitted to the court the affidavit of WFB's Vice President Brian Werner to confirm that WFB sought to collect the delinquencies from Mrs. Walls and that Mrs. Walls refused and failed to pay WFB. The Warner's affidavit fails to substantiate the assertion. The Affidavit(s) disqualify because they are based on assumptions and opinion rather than facts based on personal knowledge.

## WFB'S VICE PRESIDENT BRIAN WERNER'S AFFIDAVITS BRIAN WERNER'S 09/12/12

"On information and belief, Ms. Walls has received and continue to receive regular rental income from the multiple tenants that occupy the Property. The exact number of tenants and rental income generated by the Property is not known because Ms. Walls has refused to provide information regarding the amount of income she receives from the Property and she refuses to allow Wells Fargo to inspect the Property." See Werner's Affidavit.  See JA44-45 Paragraphs 8.9 and 10.The Affidavit does not state the purpose for which it was presented. The affidavit simply states: (1)" I am fully competent to make this affidavit and have personal knowledge of the matters averted to herein." The statement is contradicted by the fact that the affidavit is based on belief. The affidavit omits the most important issue before the court; the agreement of the Parties for the selection of forum and laws of the District of Columbia and the fact that WFB had not sought the administrative remedies set forth in the Debt Instruments.

EVEN WITHOUT THE AGREEMENT FOR SELECTION OF LAWS

AND FORUM, THE DISTRICT OF COLUMBIA WAS THE PROPER FORUM FOR LITIGATION

<u>Mrs. Walls consented to personal jurisdiction over her in the District of</u> Columbia.

(1) All the Debt Instruments were executed in the District. The property is in the District. All of Mrs. Walls' legal and equitable defenses as to the District Property, with or without agreement, are governed by the laws of the District. Litigation in Virginia excluded all of Mrs. Walls' rights and remedies under the contract and the laws of the District of Columbia.  The Virginia Lawsuit   frustrated the September 18, 2012 foreclosure on the property in the District. The combination of the excessive cost of two simultaneous actions on the same subject matter made it most difficult for Mrs. Walls to litigate in Virginia all issues relative to the District's property and at the same time fight the foreclosure process. The outcome uncertainty of the Virginia Lawsuit presented potential accumulation of debt that would be attached to the property notwithstanding the disposition of the foreclosure sale of the property.

MRS. WALLS' VIRGINIA RESIDENCY WAS THE BASIS FOR THE EXERCISED OF JURISDICTION

24

WFB was aware of Mrs. Walls' Virginia residency when it executed the Contract and made the Judicial Process Selections. The Court rewrote the Contract to favor WFB is basing In Personam Jurisdiction on Mrs. Walls' Virginia Residency.

The District Court's exercised personal jurisdiction for Diversity action without a federal question was unjust for Mrs. Walls. WFB had absolutely nothing to lose by adhering to the agreement by filing the Acton in the District of Columbia. The transfer would not have worked a hardship on WFB.  WFB understood clearly that the Virginia Litigation would gravely disadvantage Mrs. Walls, as malicious intended, and the disadvantage would increase with the additional foreclosure action  of September 18, 2012.

Justice" may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. ***World-Wide Volkswagen Corp. v. Woodson, supra, at 444 U. S. 292; see also Restatement (Second) of Conflict of Laws §§ 36-37 (1971). As we*** previously have noted, jurisdictional rules may not be employed in such a way as to make litigation "so gravely difficult and inconvenient" that a party unfairly is at a "severe disadvantage" in comparison to his opponent. **See** ***Bremen v. Zapata Off-Shore Co.***, 407 U. S. 1, 407 U. S. 18 (1972) (re forum-selection provisions); ***McGee v. International Life Insurance Co.***, at 355 U. S. 223-224.

District of Columbia Federal District Court favors subject matter and personal jurisdiction over parties who execute the contract in the District under which a breach of contract claim is brought.  See D.C Federal District Court *Memorandum Opinion* ***Stacey Eden Blau v. Grzegorz Lukasz Nowicki***  CA No. 10-0024 (ESH) at p#2 foot note *1. ***Citing*** ***Burger King Corp. v. Rudzewicz***, 417 U.S. 462n.14 (1985), in stating that "As such, the Court is satisfied that the defendant has consented to the personal jurisdiction of the courts of the District of Columbia." Both WBF and Mrs. Walls "purposefully availed themselves of the privilege of conducting a business transaction in the District ("Forum") thereby invoking "the benefits and protections of

25

its laws" **Hanson v. Denckla**, 357 U.S. 235, 532 (1958). By signing a promissory note in the District of Columbia to be enforced under the laws of the District of Columbia, ("WFB") " should reasonably anticipate bringing suit against Mrs. Walls , in the District of Columbia Courts. " *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.286, 297 (1980). Although the line of cases speaks to Defendant being sued under the states long arm statute requiring minimum contract for personal jurisdiction, they are apropos for the instant cause because all matters relative to the entire transaction are connected to the District with absolutely nothing to do with the State of Virginia.

## FEDERAL COURT'S JURISDICTION IN DIVERSITY CASES

DIVERSITY OF CITIZENSHIP. When an action is based on diversity, relevant state law controls. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Therefore, the court is obligated to apply the local laws of the jurisdiction where action arose. For breach of contract action and tort action, the court, under the rule of *lex loci delicti* applies the substantive law of the state where the wrong occurred. *See Erie Ins. Exch. V. Heffernan*, 399 Md. 598, 620, 925 A. 2d 636, 648-49 (2007); for contract, the court ordinarily apply the law of the jurisdiction where the contract was made, under the principle of *lex loci contractus* . Id. At 618, 925 A. 2d at 648. A federal court sitting in diversity must apply the choice of law rules of the forum state to determine which state laws apply. *Orange St . Partners v. Arnold*, 179 F. 3d 656, 661 (9th Cir. 1999). Therefore, even if the parties had not agreed to the applicable jurisdiction and law, the District Court of Virginia would still be bounded under *Erie* to apply the laws of the District of Columbia. When the parties, as here, by way of binding contract, accented with the mandatory word ("**Shall**") expressed their

26

choice of laws and jurisdiction, the court must give effect to the parties intent so long as the application of the chosen law does not violate the fundamental public policy of the forum. *Mc Grill v. Hill*, 31 Wash. App. 542, 644 P.2d 680, 683 (1982). The District Court's failure to honor the terms of the parties' agreement violated public policy.

## THE COURT'S ORDER PRESENTED NO JUSTIFICATION FOR DENYING MRS. WALLS MOTION TO TRASFER THE CAUSE TO THE DISTRICT OF COLUMBIA

### Limited Jurisdiction of the Federal Courts

The Federal courts are courts of limited jurisdiction and, as such, must have statutory or constitutional basis to exercise jurisdiction. *Montoya v. Chao*, 296 F. 3d 952, 955 (10th Cir. 2002). They draw their jurisdiction from the powers specifically granted by the Congress, and the Constitution, Article 111, Section 2, Clause 1. The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper. See *Montoya* , 296 F 3d at 966. Mere conclusory allegations of jurisdiction are not enough. *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3 ed. 1156, 1160 (10th Cir. 1999). When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.

The Court will take judicial notice that each American Citizen and Corporation(s) has a constitutional right to contract for mutually binding consideration and

obligations with reasonable expectations that the same will be honored and

enforced  in accordance with the contract terms  in a court of law.

The Mandatory Terms of the Debt Instruments incorporated the Applicable Laws

and the Statutory Provisions of the District of Columbia. The District Court never reviewed the

Debt Instruments for contract interpretation and the parties' selection of laws, jurisdiction,

forums and remedies. The District Court  never question the deficiency of WFB's complaint for a

determination of proper venue, subject matter jurisdiction or In Personam Jurisdiction. The

court concluded that the issue of jurisdiction and transfer were absolutely closed to any

argument Mrs. Walls could possibly present.


## THE COURT DID NOT RELY ON THE LAWS OF THE DISTRCT OF COLUMBIA IN HER DECISIONS AND MEMORANDUMS AND JUDGMENT ORDERS

The application of the Laws of the District of Columbia would have yielded favorable results for Mrs. Walls. In fact, such application would have merited dismissal of the cause in the Virginia district Court.

In the District of Columbia, foreclosure is a **non-judicial process**, which means that foreclosure

is accomplished without use of the courts, judicial review or oversight, completely eliminates

the accumulation of attorneys' fees through lawsuit litigation. In the event of a mortgage

delinquency, normally the lender or loan servicer will make several attempts to reach the

borrower requesting that the overdue payments be made. If the loan continues to remain past

due, then the lender or servicer may begin a foreclosure process to sell the property and

attempt to recover unpaid loan amounts and other costs. In the District of Columbia, however,

there does not seem to be any legal restriction on when the foreclosure process can be started

against a delinquent borrower.

The property owner can **pay the minimum amount required to cure the loan default**, and thus stop the foreclosure. The amount required to cure foreclosure is specified under D.C. law (DC Sec § 42-815.01), and may include late fees, attorney fees, foreclosure costs, and all accruals.  Here, Mrs. Walls was confronted with a million Dollar payoff amount to prevent the 09/18/2012 foreclosure due to the Virginia Lawsuit.

## DEFICIENCY BALANCE-POST FORECLOSURE

On non- judicial foreclosure sales, in the District of Columbia, the borrower can be sued for a deficiency. The statutory provisions of the District of Columbia and the Debt Instruments mandatorily required that any litigation or judicial claims against the Debt Instruments by the Note Holder- Trustee- Mortgagee, including claims of deficiency shall, only if necessary, be commenced after the foreclosure sale of the property.  Such post foreclosure provisions benefit all parties. Mortgagee's litigation that precedes foreclosure Proceedings in a non-judicial foreclosure jurisdiction would completely defeat the purpose of the non- judicial foreclosure statute.  Such action would, as in the instant case, create unnecessary cost, expenses including attorney's fees; the exact events for which the statute was created to prevent.[1] Without question, any post non-judicial judgment proceeding includes calculated amount of deficiency. The loan principal, accrued interest and attorney fees less the amount

---

[1] Appellee-Wells Fargo created the exact scenario the Non-Judicial Foreclosure statute was created to prevent. Without the consummation of foreclosure sale of the property, attorney's fees , cost and in particularly, any related deficiencies cannot be calculated with any degree of certainty.  Any unnecessary pre- Non –Judicial Foreclosure cost through litigation was recognized by the framers of the statute to be financial detrimental not only both parties, but to the potential flow of income into the District. Therefore, the statutory requirement indicates

the lender bid at the foreclosure sale.    Most importantly, non-judicial foreclosure

negates judicial intervention and the initiation   of a lawsuit is totally unnecessary

where the mortgagor   complies with the Banks' request to satisfy the deficiencies.

WFB seek attorneys' fees for the Virginia Litigation without first exercising the non-judicial

collection auctions.

CART BEFORE THE HORSE

Lawsuit for attorney's fees, cost and expenses that preceded non-judicial Foreclosure is

tantamount to placing the cart before the horse.

In enacting the provision governing non-judicial foreclosures that is now codified as D.C. Code §

42-815(b), Congress considered but decided against enactment of a more stringent provision

which would have in every case required the party seeking foreclosure to secure a court order

before foreclosure could be made.    The Committee felt that the delay which would inevitably

result from a hearing and other procedural steps would unduly restrict legitimate financial

institutions in transacting their business, and that a court foreclosure proceeding might restrict

the flow of mortgage money into the District of Columbia.    The notification requirement

ultimately enacted, Congress concluded, would adequately protect the property owner. *Young*

*v. Ridley*, 309 F. Supp. 1308, 1311 (D.D.C.1970).

---

a public policy consideration.  Further, pre-foreclosure sale litigation could well, as here, create
a cost that could prevent the Mortgagor from saving the property.  More important than that,
the pre-litigation cost could well create a deficiency. Further, pre-litigation in a non-judicial
foreclosure jurisdiction presuppose a deficiency or seek to make a deficiency a self-fulfilling
prophecy.

THE CAUSE OF ACTION IN VIRGINIA WAS PREMATURE AND NOT RIPE FOR LITIGATION

The Doctrine of Ripeness required WFB to exhaust the administrative remedies, to which the parties mutually and mandatorily bounded themselves.

The cause was not ripe and was premature for litigation. The referenced cases and authorities that represent the exhaustion rule apply to Federal Subject Matter Jurisdiction of a Constitutional dominion.

However, the same concept of ripeness applies equally to the instant diversity cause without Federal Question Jurisdiction because the District Court violated Mrs. Walls' constitutional rights to enforce the contract and deprived her of the 5th Amendment  Process rights and her 14th Amended Dues Process and Equal Protection rights under the United States Constitution. Mrs. Walls had a property right  that was deprived protection by the Court.

The doctrines of ripeness and mootness speak to exhaustion of pre-litigation remedies, such as those listed in the Debt Instruments. Ripeness doctrine intersects with several related doctrines. In cases involving a challenge to government action, ripeness is closely related to exhaustion of administrative remedies and the Administrative Procedure Act requirement of a final agency action. The doctrine of ripeness asks the question whether there is a Case or controversy. Ripeness addresses *when* litigation may occur." *Lee v. Oregon* ,107 F.3d 1387 (9th Cir. 1997) citing *Abbott Laboratories v. Gardner*, 387 U.S. 138, 148 (1967).  Mrs. Walls has a constitutional Right to Contract. The Court violated Mrs. Walls' Constitutional rights to Due Process and Equal Protection of the Law under the Fifth Amendment to the U.S. Constitution and Fourteenth

31

Amendment (" Due Process and Equal Protection Under the Law.") The Court ignored Mrs. Walls rights under the contract between the parties as to their selection of forums and application of laws.    Both the DOT and the Note set forth preconditions for filing a lawsuit. WFB must first initiate the collection process.

See DOT ,JA8-9. , Infra. P# 11 (a). Mrs. Walls waved nearly all of her legal rights to the non-judicial provision in the contract.  As a threshold matter, the District Court had a duty to determine whether WFB's claims demonstrate sufficient ripeness to establish a concrete case or controversy. WFB's complaint alleged it sought collection on the Debt Instruments at Mrs. Walls' refusal to comply but failed to substantiate the allegations with WFB's Vice President Brian Werner's Affidavits.

The September 13, 2012 hearing on Mrs. Walls' motion to transfer the cause from Virginia District Court to the District of Columbia and the September 14, 2012 related order did not address the ripeness issues. The proceedings addressed the issues of venue and jurisdiction; subject and In Personam. The issue of ripeness is properly before the court because it is interwoven with Mrs. Walls' motion to transfer.

Mrs. Walls stated an independent claim against WFB FOR BREACH OF CONTRACT. Admittedly, the claim's elements were deficient. However, District Court had an obligation to decide the Breach of Contract Claim either on standing or ripeness grounds as well as on Breach of Implied Good Faith Covenant grounds. The court summarily dismissed the breach of contract claim without engaging in contract interpretation.

32

Contract interpretation, examination of the DOT and the Note would have offered the Circuit Court an inadequate factual record for review and would revealed that the court's decision on the issues raised would amount to nothing more than issuing **an advisory opinion** . In the instant cause, the remedies to which the parties agreed constitute the requisite before adjudication. Because WFB did not seek the contractual remedies, there was nothing for the District Court to review.

_Ripeness is a limitation on the power of the judiciary. It prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it._ By clear and convincing evidence, every issue raised by WFB in the District Court had been contractually conceded by Mrs. Walls. The Court's Summary Judgment order of December 28, 2012 expresses as much:

 "According to the Complaint, Walls defaulted under the Promissory Note and failed to pay Wells Fargo the sum due after Wells Fargo demanded payment order of and every remedy raised by WFB. Given defendant's admission, there are no genuine issues of material fact in dispute. Walls have admitted that she executed the Promissory Note and the Deed of Trust (Dkt. No.331. Ex#B at p.14The Promissory Note specifies that default occurs upon "(t)he failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. ...Walls does not contest that she failed to make timely payments on the Note since June 2008" Summary Judgment Order of Dec. 28, 2012, JA#222 -225.

What was there for the District Court to Decide? All issues were contractually and personally conceded by Mrs. Walls with the available corresponding contractual remedies under the non-

judicial process under the parties chosen forum and laws, the District of Columbia, after exhaustion of the administrative contractual collection remedies. The Court had an obligation to _declares whether a case is not prudentially ripe; that the case will be better decided later. This is so even if the case contains   a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of the DOT and the Note.

The court was obligated to honor the parties' private rights to contract away certain judicial and procedural rights and to set prerequisites for the exercise of certain rights with corresponding time sequences. The recognition of the parties' contractual rights and contractual terms enhances the accuracy of their decisions and allow the court   to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, issues that time may make easier or less controversial. The court's orders only complicated the entire process. The foreclosure sale proceeds of the property were never credited to Mrs. Walls by the District Court's Orders because the separate actions crated independent cost and attorney's fees.

### ORDER OF 09/13/2012 DIRECTING MRS. WALLS TO FILE A RESPONSIVE PLEADING TO PLAINTIFF'S COMPLAINT WITHIN 14 DAYS

The court, after denying the motion to transfer, ordered Mrs. Walls to file a responsive pleading within 14 days. JA212.  On 09/27/2012 Mrs. Walls answered the Complaint denying all of Plaintiff's Claims, with a counterclaim which included a claim of  Fraud and breach of contract. JA47-50.Paragraph ten of the answer displayed the disparity between the Payoff Statement amounts for foreclosure sale, the amount prayed for in the complaint and the increased

difference of $200,000. [1]On 10/18/2012 WFB filed a motion to dismiss for failure to state a

claim under Fed. R. Civ. P. Rule 12 (b) (6)  and to dismiss Mrs. Walls Counterclaim. JA58-59. By

Order dated 11/07/2012 JA#213-214 the court set November 13, 2012 for Mrs. Wall's response

to the motion to dismiss and WFB's reply brief on November16, 2012. Mrs. Walls' opposition

was timely filed. On 11/08/ 2012 Mrs. Walls filed opposition in response to WFB's motion to

dismiss .JA67-69. The response in opposition again revealed the disparity in the amounts

quoted in the complaint and the Payoff Statement: JA#69, it included the Civil Complaint filed

against WFB in the District of Columbia and disclosed Mr. Walls assisting his wife, Mrs. Walls in

the litigation.JA68. By Order of 11/09/2012, Mrs. Walls and Mr. Wall's response to WFB's

motion to dismiss was acknowledged. The court denied the request to hold the cause in

abeyance pending the outcome of the District of Columbia cause of action, denied Mrs. Walls

request for assistance of Mr. Walls in the pleadings and dismissed the response as a pleading

but filed it for informational purposes. See.   JA215 -216.

## MRS. WALLS COUNTERCLAIM

**Order of 11/20/2012:** By Order of 11/20/2012, the court granted WFB's motion to dismiss Mrs.

Walls' counter claim with prejudice. JA217-221. On 12/05/2012, WFB  motion the court for

summary judgment , JA124-125, with a supporting brief, JA126-153. Affidavit of WFB's Vice

President, Brian Werner supported the motion. JA134. The court held insufficient the

counterclaim for breach of contract and fraud. Breach of Contract was clear. The Breach was

---

[1] The court scheduled a pretrial conference for 1/17/2013 Doc21-JA51 Proposed Discovery plan
JA54  Joint  discovery plan was entered.10/23/2012 Doc.25 –JA60-63. Rule 16 (B) JA64-66;
Discovery order was issued Oct.24. 2012.

based on the facts that WFB acted in contravention of the contract terms and such act constituted bad faith and unfair dealing in violation of the Implied Covenant of Good Faith under the Laws of the District of Columbia.  See **Pro se Appellant's  answer to the Complaint and Counter Claim: Doc#20.**

The Court denied Appellant-Walls Counterclaim as deficient. Doc. 30 (11/08/2012). The counterclaim was dismissed with prejudice. Doc.31.

The counter claim raised breach of contract issues and fraud and violation of good faith covenant by Appellee-Wells Fargo. The claims were lacking, but as previously stated, in view of the evidence available and the provisions of the Debt Instruments and the Non-Judicial Foreclosure requirements of the District of Columbia , the court was  clothed with sufficient evidence of a contract breach and a running claim of fraud against Appellee- Wells Fargo. Such merited the District Court's consideration of an amendment to Mrs. Walls Complaint to conform to the evidence.  **See Pro se Appellant's answer to the Complaint and Counter Claim: Doc#20.**

**Contract Interpretation**: The District of Columbia, Delaware, and Maryland all follow the law of objective interpretation of  contracts: when contract language is unambiguous, the court must give effect to its plain meaning.  See *Rhone-Poulenc Basic Chems, Co. v. Am Motorists Ins.* Co. , 616 A 2d. 1195-96 (Del.1992); *Bragdon  v. Twenty-Five Twelve Assos. Ltd. P'ship.* 856 A. 2d 1165, 1170 (D.C. 2004); Gen. Motors Acceptance Corp. v. Daniels, 303 Md. 254, 492 A. 2d 1306,

1310 ( 1985).Any default or breach of contract claims derivative of the Deed of Trust and  or the

Promissory Note would be considered terms of the Promissory Note and Deed of  Trust

(" Assignment of Rent")

**District of Columbia Court**: "This court has held that all contracts contain an implied duty of

good faith and fair dealing, which means that "neither party shall do anything which will have

the effect of destroying or injuring the right of the other party to receive the fruits of the

contract."***Hais v. Smith*** *,*547 A.2d 986,987 (D.C. 1988) (citation omitted). If a party to the

contract evades the spirit of the contract, willfully renders imperfect performance, or interferes

with performance by the other party, he or she may be liable for breach of the implied

covenant of good faith and fair dealing." *Id.* at 987-988. This duty prevents a party from evading

the spirit of the contract, willfully rendering imperfect performance or interfering with the

other party's performance. *See* RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981).

Wherefore, the Court erred and otherwise abused its discretion in dismissing Mrs. Walls breach
of contract claim with pre The Second Appealable order JA394-Memorandum  Opinion- was
issued on March 04, 2013( JA375 -393)

The March 04, 2013 ORDER- MEMORANDUM OPINION "(MO") , order awarding attorneys' fees

and cost, referenced previous orders such as the  12/28/2012 Summary Judgment Order

awarding attorneys' Fees without a fees schedule and an amount certain. See JA375. The Court

based the March 04, 2013 Order on inconclusive facts both contained in previous orders and on

the following facts.

WFB's Motion for Summary Judgment was filed on 12/05/12 (DOC#32P1-2) JA124.WFB's Brief

in Support of Motion for Summary Judgment (DOC33) JA126 indicates action on both the Note

and the DOT. *Ld* at 126. WFB alleged that Mrs. Walls had failed to (1) Answer the Interrogatories.  Eleven days after the motion was filed, WFB, by Email, claimed efforts to contact Mrs. Walls had failed.  (Doc#35-1P#4-5 ) JA160, 161&162.  WFB's Counsel contact by Email, Mrs. Walls' Counsel for the District of Columbia lawsuit and expressed her efforts to contact Mrs. Walls'. Counsel, herein, informed Mrs. Walls of WFB's discovery request. Mrs. Walls promised answers to the discovery material on Monday, Dec. 24, 2012. JA161, the request was denied and Mrs. Walls requested an extension for that coming Thursday Dec.20, 2012 rather than Monday, Dec. 24, 2012. The request was declined. JA161-162. The record reveals that any good faith effort by WFB to communicate with Mrs. Walls for discovery response was after WFB had filed the Summary Judgment motion of 12/05/12.  Evidence indicates that WFB never contact Mrs. Walls with any overdue discovery request.

On 12/31/2012 Mrs. Walls filed with the court  Notice of Discovery certifying that she had served WFB with answers to the  outstanding discovery request. (Doc46 ) JA 173 and her efforts to obtain WFB's consent to the motion on December 24, 2012. See JA318 -319, filed with the court in 12/28/2012.

Mrs. Walls 'Answers to WFB 's Discovery request was served on WFB's Attorney on 12/28/2012. See JA 276 to 299. Answer To Interrogatories ("ATI")P #5 raised a genuine issues of disputed fact as to the owed amount on the property ($866.613.00) relative to the payoff statement of August 22, 2012; the parties agreed choice of forum and application of law; and the provision of the DOT that required only ACTUAL COST  to Mrs. Walls rather than the $123,000 Payoff Statement  speculative charges. Whether WFB acted in Good Faith under D.C. Code  UCC 28:1-

304 and whether there was a violation of DC Code Sec. 42-818 relative to the Auction Commission amount of $50,000 on the Payoff Statement were disputed issues of material facts for summary judgment consideration of March 04, 2013. . JA#283. Mrs. Walls asserted that the Virginia Lawsuit, after the sale of the property, transformed from one for judgment on the Promissory Note and Deed of Trust to one for any deficiency amount owed by Mrs. Walls. The ATI stated clearly: *"The District of Columbia Code Section 42-186 provides means for which Wells Fargo may seek recovery of any claimed and just deficiency. "* Mrs. Walls states" *I, through my Husband, communicated to Wells Fargo's Vice President, Brian Werner, that we were financially able to pay the amount of $663,605.31 or a slightly increased amount as to interest"* JA#284. Mrs. Walls questioned the sought after summary judgment amount of $672,349.04. JA285. Mrs. Walls stated that Brian Werner provided a false Payoff Statement and such was an act of fraud and bad faith. See ATI 9&10, JA287. Mrs. Walls explains her good faith dealing with WFB's Vice President, Mr. Brian Werner at JA296 that included her efforts to make payments, set aside money for payment of the mortgage and upkeep of the property for income production. Mrs. Walls Interrogatories to WF served on WF on the 29th of December 2012.See JA300 -317.

Genuine Issues of Disputed Facts clearly exist for the preclusion of Summary Judgment, contrary to WFB's contention at JA127. As undisputed facts, WFB listed the following: (1) default by Mrs. Walls was conceded; *contested was the amount owed; admitted by WFB*. JA127; The amount that was owed at the summary judgment stage was important because the property had been sold without credit to Mrs. Walls towards the requested summary judgment amount. (2) *"The Note provides that Barbrabda Walls will pay all cost of collection or any*

39

*similar type of cost, attorney's fees and court cost upon default.*" The statement by WFB is misleading and carries the erroneous assumption that WFB had engaged in collection process in compliance with the provisions of the Note and DOT agreement and the Non-Judicial Foreclosure process in the District of Columbia. The undisputed fats is; the lawsuit in Virginia was unnecessary, premature and in violation of the terms of the Debt Instruments. The Court never visited the terms of the Debt Instrument for the intent of the parties for summary judgment purposes.

Representation to the court is displayed at JA129 (11) where WFB states: " As of November 7, 2012, 2012, the total amount of the principal and interest owing under the Note is $672,349.04 plus attorney's fees, expenses, costs, now existing or hereafter incurred and increased at 9.49% rate set forth in the Note from November 7, 2012, until paid.(Werner Affidavit. Ex. A) See ( Doc33-1 -12/05/2012). JA133-135. Brian Werner's affidavit failed to list the purchase price of the property for an adjustment for credit to Mrs. Walls for summary judgment purposes, See JA 179. The Foreclosure Sale Notice of September 18, 2012 cited $778,955.65 as the balance. See JA37-38. Between 9/18/2012 and 11/07/2012 the balance decreased. Brian Werner's payoff statement,JA109, contradicts the his Affidavit, JA134-135. The affidavit amount is $672, 349.04; the payoff amount as of August 22, 2012 is $868,613.00.JA#109. Which balance is correct for summary judgment purposes? Here lie genuine issues of disputed facts that precluded summary judgment. The fact that Mrs. Walls was behind on her payments for default purposes require absolutely no judicial declaration; such was a matter of fact with the non-judicial availability of all remedies sought by WFB in the VA litigation.

40

## MRS. WALLS' RESPONSE TO WFB'S DISCOVERY REQUEST BROUGHT CLARITY TO THE GENUINE ISSUES OF DISPUTED FACTS

Wells Fargo's discovery requests were submitted to the court for the purpose of the court to deem the same admitted under the presentation that Mr. Walls had not responded to the same. JA 137 to 156 (See Doc33-2, 12/05/12 P2 of 18 ID#192).

## MRS. WALLS WAS DENIED THE 14 DAYS TO OPPOSE WEB'S MOTION TO COMPEL DISCOVERY BEFORE THE ISSUANCE OF THE DECEMBER 28, 2012 ORDER

WFB's Motion to Compel Discovery was filed with the Court by WFB 12/20/2012. (Doc 35) JA154-155. Eight days after WFB's motion to compel was filed with the Court, the court, while acknowledging the pending motion, issued the Order of December 28, 2012 and mooted WFB's Motion. The court to issue the March 04, 2013 Order absent Mrs. Walls Discovery Response.

### The Second Appealable order JA394-Memorandum   Opinion- was issued on March 04, 2013( JA375 -393)

The March 04, 2013 ORDER- MEMORANDUM OPINION "(MO")  , order awarding attorneys' fees and cost, referenced previous orders such as the   12/28/2012 Summary Judgment Order awarding attorneys' Fees without a fees schedule and an amount certain. See JA375. The Court based the March 04, 2013 Order on inconclusive facts both contained in previous orders and on the following facts.

WFB's Motion for Summary Judgment was filed on 12/05/12 (DOC#32P1-2) JA124.WFB's Brief in Support of Motion for Summary Judgment (DOC33) JA126 indicates action on both the Note and the DT. *Ld* at 126. WFB alleged that Mrs. Walls had failed to (1) Answer the Interrogatories. Eleven days after the motion was filed, WFB, by Email, claimed efforts to contact Mrs. Walls

41

had failed.  (Doc#35-1P#4-5 ) JA160, 161&162.  WFB's Counsel contact by Email, Mrs. Walls'

Counsel for the District of Columbia lawsuit and expressed her efforts to contact Mrs. Walls'.

Counsel, herein, informed Mrs. Walls of WFB's discovery request. Mrs. Walls promised answers

to the discovery material on Monday, Dec. 24, 2012. JA161, the request was denied and Mrs.

Walls requested an extension for that coming Thursday Dec.20, 2012 rather than Monday, Dec.

24, 2012. The request was declined. JA161-162. The record reveals that any good faith effort by

WFB to communicate with Mrs. Walls for discovery response was after WFB had filed the

Summary Judgment motion of 12/05/12.  Evidence indicates that WFB never contact Mrs. Walls

with any overdue discovery request.

On 12/31/2012 Mrs. Walls filed with the Court  Notice of Discovery certifying that she had

served WFB with answers to the  outstanding discovery request. (Doc46 )  JA 173 and her

efforts to obtain WFB's consent to the motion on December 24, 2012. See JA318 -319, filed

with the court in 12/28/2012.

Mrs. Walls 'Answers to WFB 's Discovery request was served on WFB's Attorney on 12/28/2012.

See JA 276 to 299. Answer To Interrogatories ("ATI")P #5 raised a genuine issues of disputed

fact as to the owed amount on the property ($866.613.00) relative to the payoff statement of

August 22, 2012; the parties agreed choice of forum and application of law; and the provision of

the DOT that required only ACTUAL COST  to Mrs. Walls rather than the $123,000 Payoff

Statement  speculative charges. Whether WFB acted in Good Faith under D.C. Code  UCC 28:1-

304 and whether there was a violation of  DC Code  Sec. 42-818 relative to the Auction

Commission amount of $50,000 on the Payoff Statement were  disputed issues of material facts

42

for summary judgment consideration of March 04, 2013. . JA#283. Mrs. Walls asserted that the Virginia Lawsuit, after the sale of the property, transformed from one for judgment on the Promissory Note and Deed of Trust to one for any deficiency amount owed by Mrs. Walls. The ATI stated clearly: *"The District of Columbia Code Section 42-186 provides means for which Wells Fargo may seek recovery of any claimed and just deficiency. "* Mrs. Walls states" I, *through my Husband, communicated to Wells Fargo's Vice President, Brian Werner, that we were financially able to pay the amount of $663,605.31 or a slightly increased amount as to interest"* JA#284. Mrs. Walls questioned the sought after summary judgment amount of $672,349.04. JA285. Mrs. Walls stated that Brian Werner provided a false Payoff Statement and such was an act of fraud and bad faith. See ATI 9&10, JA287. Mrs. Walls explains her good faith dealing with WFB's Vice President, Mr. Brian Werner at JA296 that included her efforts to make payments, set aside money for payment of the mortgage and upkeep of the property for income production. Mrs. Walls Interrogatories to WF served on WF on the 29th of December 2012.See JA300 -317.

Genuine Issues of Disputed Facts clearly exist for the preclusion of Summary Judgment, contrary to WF's contention at JA127. As undisputed facts, WFB listed the following: (1) default by Mrs. Walls was conceded; *contested was the amount owed; admitted by WF.* JA127; The amount that was owed at the summary judgment stage was important because the property had been sold without credit to Mrs. Walls towards the requested summary judgment amount. (2) *"The Note provides that Barbrabda Walls will pay all cost of collection or any similar type of cost, attorney's fees and court cost upon default."* The statement by WFB is misleading and carries the erroneous assumption that WFB had engaged in collection process in compliance

43

with the provisions of the Note and DOT agreement and the Non-Judicial Foreclosure process in the District of Columbia. The undisputed fats is; the lawsuit in Virginia was unnecessary, premature and in violation of the terms of the Debt Instruments. The Court never visited the terms of the Debt Instrument for the intent of the parties for summary judgment purposes.

Representation to the court is displayed at JA129 (11) where WFB states: " As of November 7, 2012, 2012, the total amount of the principal and interest owing under the Note is $672,349.04 plus attorney's fees, expenses, costs, now existing or hereafter incurred and increased at 9.49% rate set forth in the Note from November 7, 2012, until paid.(Werner Affidavit. Ex. A) See ( Doc33-1 -12/05/2012). JA133-135. Brian Werner's affidavit failed to list the purchase price of the property for an adjustment for credit to Mrs. Walls for summary judgment purposes, See JA 179. The Foreclosure Sale Notice of September 18, 2012 cited $778,955.65 as the balance. See JA37-38. Between 9/18/2012 and 11/07/2012 the balance decreased. Brian Werner's payoff statement,JA109, contradicts the his Affidavit, JA134-135. The affidavit amount is $672, 349.04; the payoff amount as of August 22, 2012 is $868,613.00.JA#109. Which balance is correct for summary judgment purposes? Here lie genuine issues of disputed facts that precluded summary judgment. The fact that Mrs. Walls was behind on her payments for default purposes require absolutely no judicial declaration; such was a matter of fact with the non-judicial availability of all remedies sought by WFB in the VA litigation.

MRS. WALLS' RESPONSE TO WFB'S DISCOVERY REQUEST BROUGHT CLARITY TO THE GENUINE ISSUES OF DISPUTED FACTS

Wells Fargo's discovery requests were submitted to the court for the purpose of the court to

deem the same admitted under the presentation that Mr. Walls had not responded to the same.

JA 137 to 156 (See Doc33-2, 12/05/12 P2 of 18 ID#192).

### MRS. WALLS WAS DENIED THE 14 DAYS TO OPPOSE WEB'S MOTION TO COMPEL DISCOVERY BEFORE THE ISSUANCE OF THE DECEMBER 28, 2012 ORDER

WFB's Motion to Compel Discovery was filed with the Court by WFB 12/20/2012. (Doc 35)

JA154-155. Eight days after WFB's motion to compel was filed with the Court, the court, while

acknowledging the pending motion, issued the Order of December 28, 2012 and mooted WFB's

Motion. This gave way for the court to issue the March 04, 2013 Order absent Mrs. Walls

Discovery Response.

### MOTION FOR ATTORNEY'S FEES FILED 01/11/2013 JA#219-320

One 1/11/2013 WFB filed a motion for attorney's fees and cost with supporting affidavit and

memorandum. Doc. #50; JA326-348. The memorandum "requested that the Court award

attorney's fees and cost in accordance with the Loan Documents JA04, Dot, and the Note,

JA268-273 referred to as Exhibit # 1-2.

Order of 03/04/13 granted WFB's motion in reliance on the debt instruments. JA394; with

proposed justification in a 19 page Opinion which contained chronology of the proceedings.

JA375-393.

The M.O of March 04, 2013 revisited Summary Judgment Order of December 28, 2012.

which awarded WFB attorney's and cost without evidence. The 11/28/2012 Order has been discussed in detail. The 3/04/2012, M.O blames Mrs. Walls for  WFB's accumulation of Attorneys' fees and Piece Meal Litigation.

Therefore, the "Piece-meal Appeal" JA377 of the two orders, 12/28/2012 and 3/04/2013 was created by the Court, not Mrs. Walls. Mrs. Wall's motion for reconsideration gave the Court an opportunity to make the corrections to correspond to an amended Summary Judgment Order. The Court rushed to judgment with the clear understanding that Brian Werner's Affidavit failed for lack of personal knowledge omitted material facts and was misleading.   The Court's assertion that  " Defendant's position on Plaintiff's request for attorneys' fees and cost is meritless…("Walls's unnecessary litigious conduct has magnified the cost of litigation"JA383-334, must be viewed with strict serenity.   The Court has actually defended WFB in all of it litigation deficiency and represented WFB by  instructing WFB to follow the Court's Directions for the orders and judgments rendered in the  case.

CLOSED MIND-FIGHTING WORDS OF CONDEMNATION:

The Court deemed Mrs. Walls' Counterclaim  as **(" Little more than  frivolous  delay tactics.")** JA389.

The language represents judicial bias and words of condemnation as to Mrs. Walls as a person and as a litigant. Mrs. Walls' rights to defend herself is viewed with judicial contempt.

**DISCOVERY REQUIREMENT –SUMMARY JUDGMENT MOTION OF  12/05/2012**

The Court concluded that Mrs. Walls delay in responding to WFB's Discovery (" simply  run up attorneys' fees unnecessarily." JA389. The Court misunderstood the efforts made by Mrs. Walls

to satisfy the Discovery Request, the court's own Order that mooted WFB's motion to compel when Mrs. Walls had in fact responded to the discovery request before the time had expired for Mrs. Walls to oppose the motion or otherwise respond to the discovery request. The 12/28/2012 Summary Judgment order was required to be based on the entire record. The Court asserts that it received response in opposition to the summary judgment motion and that Mrs. Walls' post summary judgment pleadings to the effect:

(" she "d(id) not have enough information to oppose the summary judgment motion at this time" was insufficient reasonable explanation for her failure to file initial discovery disclosure or to respond in any respect to plaintiff's various discovery request" JA389-390.

The motion-memorandum reveal judicial errors and imperfections of the Order of 12/28/2012, and Brian Werner affidavits' omission of material facts. The ORDER of denial- 01/04/13- provided reconsideration for WFB; not for Mrs. Walls. Court Order of 01/04/13: JA363: " Although the Court does not intend to reconsider its decision to grant summary judgment in plaintiff's favor, and Walls's most recent pleading still fails to offer and reasonable explanation for her failure to timely file discovery disclosure or response to discovery request, **the Court is concerned about the precise amount of the judgment against Walls in light of the sale of her property** Walls' opposition to WFB's Motion for attorneys' fees at JA195- 208 of 02/14/2013. **JA208 specifically**. The opposition elaborates extensively on the insufficiency of the Court's 12/28/2012 Order. JA355-359 . Brian Werner's supplemental affidavit of 01/10/13 made it more apparent that the dollar amount was not ripe for summary judgment. At JA179 Werner states (" Wells Fargo has not received any proceeds from the Sale") of 9/18/2012. (9), a

contradiction to previous affidavit. JA133. "As of November 7, 2012, the total amount due to Wells Fargo from Ms. Walls under the Note, is $672,349.04, which includes the unpaid principal balance, accrued and unpaid interest, and late charges…"JA179. Which of Brian Werner's affidavit was correct? Either way, a lawsuit was not necessary for the calculation of the amount owed under the Note.

With all things considered, why would the court refuse to modify an acknowledged deficient, unenforceable order absence a sum certain?  Such refusal demonstrates extreme judicial bias towards Mrs. Walls. The Judicial Bias was detrimental for  Mrs. Walls.

COURT ; " Given the tortured litigation chronicled above, the Court ascertains no credibility to Walls's protest that Wells Fargo is responsible for unnecessarily expanding its attorneys' fees and cost" JA390.

Again, the statement exemplifies judicial bias, fighting words and a conclusion without impartial judicial analysis. The Court never analyzed (1) Debt Instruments for the non-judicial remedies or choice of law selected by the parties. (2) The fact that all issues decided by the court were conceded by Mrs. Walls prior to June 18, 2012 filings with the Court. (3) Declaratory Judgment would have quickly put the conceded issues to rest with minimum litigation. (4)  The only issue before the court is Attorneys' fees and the accuracy of cost and expenses.  (5) The fact that WFB violated the Contract by filing the action in Virginia and filing the action before seeking the available non-judicial remedies.

The Court's order continues to do three things; defend and represent WFB, and the two appealable orders. The Court indicated that she informed Mrs. Walls that( on 9/13/2012) "*her*

*motion to transfer this civil action was different from any foreclosure-related proceedings in the District of Columbia and involved the totally separate, discrete issues of whether the Promissory Note has been paid" JA390.* The Court ignored the benefits of Mrs. Walls' pleading, the judicial limitations the Note and the DOT placed on the court.   The Complaint for $804,131.00.JA3, the Payoff Amount: $866,613. JA109, totaled $1,670,744, was to be paid at foreclosure sale of  09/18/2012 caused Mrs. Walls to lose the property.

GENERAL OBJECTIONS TO ATTORNEYS' FEES: Mrs. Walls' objections to the award of attorneys' fees is specific. The attorneys' fee award for pre-June 18, 2012 activities and litigation are impermissible.JA390.

 All pre-June 18, 2012 fees and cost not identified on the Payoff statement of August 22, 2012, relative to the September 18, 2012 auction sale, are not collectable. Post 9/18, 12 non-judicial foreclosure cost and fees must be examined for their propriety under the District of Columbia laws.

STATUTE OF LIMITATIONS:  WFBs claims for attorney fees for services rendered three years next to September18, 2012 are untimely and  barred by the  District of Columbia  three year statute of limitation, District of Columbia Code Section 12-301 (7). See *Richard A. Burgess v. Square* 3324 Hampshire Gardens Apartments, Inc., D.C. Court of Appeals No. 96-cv-117 (April 3, 1997,) at P# 4.  Citing *Doolin v. Environmental Power Ltd.,* 360 A. 2d 493, 495 n.2 (D.C. 1976). The District of Columbia's laws apply to the cause. The parties contract form the basis of the controversy *sub judice* is sufficient to satisfy for the application of D.C. statute of limitations, The contract was made in the District, to be performed in the District, and by agreement,

governed by District law. See ***Johnson v. Long Beach Mortg Loan Trust*** 2001-4, 451 F. Supp. 2d

16, 31 (D.D.C. 2006.

FEEHAN'S VERIFIED AFFIDAVIT REGARDING FEES AND COST JA327

1.      The fee of   ($23,695,) (    $62,477.19)( $49,249.62)($36,607.00)(63,000.00) ($5,000.00)

and$3,307.77) are uncollectable and barred by the District of Columbia Statute of Limitations.

Objection: The cost and expense, if permissible, must be attached to the principal of the Note

and must be conclusive as to the total amount of such fees. If Not, an explanation is required as

to whether said sum represents the auction sale of   09/18/2012. Further, there is   no

verification by documentation of the amounts allegedly paid and their  purpose. (Trustee's bill

but unpaid fees related to foreclosure and  litigation $8,287.50 is accepted without objections **if**

it represents the sum total , inclusive of the Trustee's bill for the 9/18/2012 Auction and other

trustee's bill.  Objection: The total cum of 2251, 624.08 consist double billing for the same-

simultaneous services. See ORDER 03/04/13 JA192.

CONCLUSION

RELIEF SOUGHT BY PRO SE, MRS. WALLS:      Mrs. Walls move the court to set aside the District

Court's Judgment - order of December 28, 2012 and March 4, 2013 and find the following:

1.  The Order awarding $251,624 attorneys' fees must set aside as sought in bad faith. 2.
    WFB is not entitled to the fees and cost related to the District court litigation, 3. Because
    WFB breached the contract.4, by filing the cause in the District Court.5, with the
    selection of laws and forum was the District of Columbia and the process was the
    exhaustion of the administrative remedies as a prerequisite to the facts reveal that the

50

ONLY reason WFB brought the cause was for the purpose of creating attorneys' fees and cost. For enforcement of all related debts non-judicially, Mrs. Walls waive all of her rights. JA 8-9 , infra, P#8. Waiver of her rights to accelerate the  Debt obviated the necessity of litigation for that purpose and for the purpose of attorney's fees. JA9-1st paragraph ,infra. P#6 and JA 9. 3rd Paragraph, and Promissory Note-JA378, infra.P #6.JA 8, infra.P#7. Mrs. Walls was bound to indemnify WFB for non-judicial action under the contract-JA378, and to secure payments on the debt, WFB needed only enforced the Assignment of Rent clause in the contract. JA9 (DOT), infra. #7.   All the specified remedies upon  occurrence of default excluded litigation for collections  See JA9-10, infraP#8; Bank Remedies upon default; JA10-11 (DOT) Infra.P#8 -9.Only after failure at the remedies was WFB entitled to seek judicial intervention. See JA11 (DOT) infra P#10, and the judicial intervention was to take place in the District of Columbia by the agreement of the parties.  See JA12, infra. P#10, JA272, Infra. P#11 for the selection of forums and applicable laws.

Prayer for relief: Mrs. Walls prays the fees and cost be set aside for a verifiable deficiency amount  with credit of $575,000 .

Oral Hearing requested:

Harry T. Spikes , Sr#02493

1703 New Jersey Ave N. W

Washington, DC 20001

202 288-4175

Fax (301) 2486865

harryspikes@gmail.com

**CERTIFICATE OF COMPLIANCE**

Counsel for Appellant, Barbranda Walls, certify as follows:

1.  The brief has been prepared using 12 point New Roman, proportionally spaced serif typeface.

2.  Exclusive of cover page, corporate disclosure statement, table of content; table of citations; statement with respect to oral argument, any addendum containing statutes, rules, or regulations; and certificate of service, the Brief of Appellant contains ( Verdana) word ( per word count system in Word 13,998) I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions.

Harry T. Spikes, Sr.
Fed Bar#02493

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10ᵗʰ day of June, 2013, opposing counsel was served a copy of the Appellant's brief by regular mail, postage prepaid and through the Fourth Circuit Court's electronic filing system. Served: Kutak Rock, LLP Loc Pfeiffer  and Ms. Alison W. Feehan 111 East Main Street Suite 800 Richmond Virginia 23219.

Harry T. Spikes , Sr.#02493
1708 New Jersey Ave N. W
Washington, DC 20001
202 288-4175
Fax (301) 2486865

harryspikes@gmail.com