# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CONSOLIDATED
No.13-1087 (L)
No. 13-1365
1:12-cv-00664-LMB

WELLS FARGO BANK, N.A.

    Plaintiff-Appellee,

V.

BARBRANDA WALLS,

    Defendant-Appellant

Appealed from the United States District Court for the
**Eastern District of Virginia Alexandria Division**

**APPELLANT'S REVISED FORMAL BRIEF**

Harry T. Spikes, Sr.#02493
1703 New Jersey Ave N. W
Washington, DC 20001
202 288-4175
Fax (301) 2486865
harryspikes@gmail.com

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1365    Caption: Barbranda Walls v Wells Fargo Bank N.A.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Barbranda Walls
(name of party/amicus)

who is _____ Appellant _____, makes the following disclosure:
     (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: Harry T. Spikes, Sr Federal Bar# 02493          Date: April 8, 2013

Counsel for: Appellant Barbranda Walls

## CERTIFICATE OF SERVICE
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on ___April 08, 2013___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Alison Feehan VSB 35225 1111 Main Street Suite
800 Richmond VA 23219
Loc,Pifeiffer@KutakRock.com
Feehan@KuakRock.com Counsel for Wells Faro
Appellee

Harry T. Spikes, SR.
(signature)

April 08, 2013
(date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 13-1365 ___    Caption: Barbranda Walls v Wells Fargo Bank N.A.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Barbranda Walls _____
(name of party/amicus)

_____

who is _____ Appellant _____, makes the following disclosure:
           (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                                  ☐ YES ☑ NO
      If yes, identify all such owners:

- 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: Harry T. Spikes, Sr. Federal Bar#02493          Date:    March 29, 2013

Counsel for: Appellant , Barbrnda Walls

## CERTIFICATE OF SERVICE
**************************

I certify that on ___March 29,2013___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Alison W. Feehan, VSB No. 35225  1111 East Main Street, Suite 800 Richmond , VA. 23219 Loc.Pfeiffer@KutakRock.com   Alison. Feehan@KuakRock.com  Counsel for Wells Fargo Appellee

Harry T. Spikes, SR.                          March 29, 2013
         (signature)                               (date)

### TABLE OF CONTENT

1. JURISDICTION OF THE COURT.............................................................1

2. ISSUESS BEFORE THE COURT.............................................................1

3. STATEMENT OF THE CASE.................................................................1

4. STATEMENTOFTHE FACTS.................................................................3

5. SUMMARY OF ARGUMENT.................................................................4

6. APPLICABLE LAWS AND JURISDICTION

    CONTROL JUDICIAL CONTRARY DECISION... ... .............................4

7. ENFORCEMENT OF THE COLLECTION.................................................5

8. ATTORNEYS' FEES AVAILABLE WITHOUT LITIGATION.....................6

9. ATTORNEYS' FEES AND OTHER COLLECTION COST............................6

10. The Court's Quotes from the Deed of Trust.........................................7

11. INDEMNIFICATION THE ASSIGNMENT OF RENT REMEDY WAS NEVER

    EXERCISED BY WFB.......................................................................7

12. BANK'S REMEDIES UPON OCCURRENCE OF DEFAULT.........................8

13. MISCELLANEOUS PROVISION.............................................................10

14. SELECTION OF DISTRICT OF COLUMBIA COURTS AND LAWS.............10

15. FIRST PAGE OF THE PROMISSORY NOTE: AJ 11..................................11

16. THERE ARE CONSISTENT PROVISIONS IN THE DEED OF TRUST AND

PROMISSORY NOTE AS TO CHOICE AND APPLICABLE

LAWS AND JURISDICTION.................................................................11

17. STANDARD OF REVIEW FOR SUMMARY JUDGMENT Fed. R. Civ. P. Rule

    56.....12

18. STANDARD OF REVIEW FOR A 12 (b) (6)

MOTION TO DISMISS .......................................................................12

19. *ORDER OF DEFAULT* JUDGMENT *ON JULY 25. 2012*.............................14

20. SEWER SERVICE OF PROCESS..........................................................14

21. ORDER -ENTRY OF DFAULT JA274-275 -Dated 07/25/12............................15

22. *NO CONSIDERATION FOR PRO SE LITIGANT:*

23. JUDICIAL ADVICE TO PLAINTIFF...............................................................15

24. CONCENT ORDER TO SET ASIDE DEFAULT.........................................16

25. HEARING ON MOTION TO TRANSFER SEPTEMBER 13, 2012.........................17

26. Abuse of Discretion in concluding, without evidence venue was proper:.....................17

27. PERTAINING TO VENUE -ONLY MRS. WALLS WAS INCONVENIENT.............20

28. WFB'S COMPLAINT CONTAINES WILFUL AND KNOWN INACCURACIES AND OMISSIONS OF RELEVANT MATERIAL FACTS.............................................21

29. COLLECTION PROCESS..........................................................................21

30. *WFB'S VICE PRESIDENT BRIAN WERNER'S AFFIDAVITS BRIAN WERNER'S 09/12/12*............................................................................................22

31. EVEN WITHOUT THE AGREEMENT FOR SELECTION OF LAWS AND FORUM, THE DISTRICT OF COLUMBIA WAS THE PROPER FORUM FOR LITIGATION...22

32. MRS. WALLS' VIRGINIA RESIDENCY WAS THE BASIS FOR THE EXERCISED OF JURISDICTION....................................................................................23

33. FEDERAL COURT'S JURISDICTION IN DIVERSITY CASES

DIVERSITY OF CITIZENSHIP................................................................25

34. THE COURT DID NOT RELY ON THE LAWS OF THE DISTRCT OF COLUMBIA IN HER DECISIONS AND MEMORANDUMS AND JUDGMENT ORDERS................26

35.DEFICIENCY BALANCE-POST FORECLOSURE............................................27

36. CART BEFORE THE HORSE.....................................................................28

37. THE CAUSE OF ACTION IN VIRGINIA WAS PREMATURE AND NOT RIPE FOR LITIGATION.......................................................................................29

38. ORDER OF 09/13/2012 DIRECTING MRS. WALLS TO FILE A RESPONSIVE PLEADING TO PLAINTIFF'S COMPLAINT WITHIN 14 DAYS............................33

39. MRS. WALLS' COUNTER CLAIM.....................................................34

40. District of Columbia Court GOOD Faith COVERNANT.........................34

41. DISCOVERY RESPONSE BY MRS. WALLS...................................37

42. The Second Appealable order..................................................37

43. SPECIAL NOTE.................................................................37

*44. ORDER OF JANUARY 31, 2013 JA338...................................37*

*45. March 04, 2013 Order-Memorandum JA354/ Order JA373...............37*

*46. MRS. WALLS' RESPONSE TO WFB'S DISCOVERY REQUEST BROUGHT CLARITY TO THE GENUINE ISSUES OF DISPUTED FACTS........................................................................40*

47. MRS. WALLS WAS DENIED THE 14 (21) DAYS TO OPPOSE WEB'S MOTION TO COMPEL DISCOVERY BEFORE THE ISSUANCE OF THE DECEMBER 28, 2012 48. ORDER....................................................................40

*48. THERE WAS NO NEED FOR ADJUDICATION OF THE ALREADY CONCEDED FACTS..............................................41*

49. DISCOVERY REQUIREMENT-SUMMARY JUDGMENT MOTION OF 12/05/2012..................................................................43

50. MRS.WALLS' PLEADING MADE THE COURT AWARE THAT THERE WAS INSUFFICIENT EFFIDANCE FOR THE AWARD OF ATTORNEY'S FEES AND THERE WAS NO ATTORNEY'S FEE SCHEDULE FROMWFB.........................44

51. STATUTE OF LIMITATIONS...................................................46

52. OBJECTIONS TO ATTORNEYS' FEES.........................................46

3

53.  FEEHAN'S  VERIFIED  AFFIDAVIT  REGARDING  FEES  AND  COST  JA235

at236.................................................................................................................46

54. CONCLUSION.................................................................................47

55. RELIEF SOUGHT BY PRO SE, MRS. WALLS....................................47

56.Prayer for Relief............................................................................48

57. Oral Hearing is Requested.............................................................48

## **ATTACHMENTS**

A.  **Defendant Barbranda Walls' answers to Plaintiff's first set of interrogatories request for production of document and request for admissions........000276-000299.**

B.  **Defendant Barbranda Walls' First set of Interrogatories, Request for Production of Documents and Requests for Admissions to Defendant Wells Fargo. .....000300 -000318**

4

## TABLE OF CASES

1.  *Anderson v. Liberty Lobby, Inc.*

*477 U.S.242.248.106 S.Ct. 2505.01 L.E. 2d 202*..................................................12

2.  *Abbott Laboratories v. Gardner, 387 U.S. 138, 148 (1967)*...............................30

3. *Bryant v. Bell Atl. Md. ,Inc.;. 288 F 3d 124; 133 (4th Cir. 2003.)*............................12

4. *Bremen v. Zapata Off-Shore Co., 407 U. S. 1, 407 U. S. 18 (1972)*...................24

5.  *Bragdon v. Twenty-Five Twelve Assos. Ltd. P'ship. 856 A. 2d 1165, 1170 (D.C. 2004)*..................................................................................34

6. *Burger King Corp.v. Rudzewicz 417 U.S 462n 14 (1985)*.....................................24

7. <u>*Doolin v. Environmental Power Ltd.,*</u>

*360 A. 2d 493, 495 n.2 (D.C. 1976)*..................................................46

8. e.g.<u>YeGER V. Foster</u>, 406 P.2d 370 (Mon.1965)........................................19

9. <u>*Erie R.R v. Tompkins, 304 U.S. 64, 78 (1938)*</u>..........................................25

10. <u>*Erie Ins. Exch. V. Heffernan, 399 Md. 598, 620, 925 A. 2d 636, 648-49 (2007)*</u>........25

11. *Freeman v. Fallin, 254 F. Supp. 2d 52,56 (D.D.C. 2003)*.....................................16

13. *Gen. Motors Acceptance Corp. v. Daniels,*

*303 Md. 254, 492 A. 2d 1306, 1310 (1985)*..................................................34

14.<u>Hanson v. Denckla</u>, 357 U.S. 235, 532 (1958).........................................24

15. <u>*Hais v. Smith* ,547 A.2d 986,987 (D.C. 1988)*</u>.........................................34

16. *Johnson v. Long Beach Morta Loan Trust 2001-4,*

*451 F. Supp. 2d 16, 31 (D.D.C. 2006.)..................................................46*

17. *King v. Indus Freeman v. Fallin, 254 F. Supp. 2d 52,56 (D.D.C. 2003).. Bank of Washington, 747A. 2d 151, 155 (D.C.1984) at 155. ...........................................14*

18. *Lee v. Oregon ,107 F.3d 1387 (9th Cir. 1997) .............................................30*

19. Abbott Laboratories v. Gardner, 387 U.S. 138, 148 (1967)
McGee v. International Life Insurance Co.,..............................................24

20.    *Me Grill v. Hill, 31 Wash. App. 542, 644 P.2d 680, 683 (1982).......................25*

*Montoya v. Chao, 296 F. 3d 952, 955 (10th Cir. 2002).......................................25,26*

21.    Orange St. Partners v. Arnold, 179 F. 3d 656, 661 (9th Cir. 1999).....................................25
22.    *Presley v. City of Charlottesville, 464 F 3d 480, 483 (4ᵗʰ Cir.2006)....................12*

23. Richard A. Burgessv. Square 3324 Hampshire Gardens Apartments. Inc,

 D.C.Court of Appeals 96-cv-117 (April 3, 1997)...............................................46

24. *Rhone-Poulenc Basic Chems, Co. v. Am Motorists Ins.*

*Co., 616 A 2d. 1195-96 (Del.1992)......................................................34*

25. *Stacey Eden Blau v. Grzegorz Lukasz Nowicki CA No. 10-0024 )esh) at p#2 foot note*1.......................................................................24*

26. *Thompson v. Horrell, 158 S.E 633 (N.C.1968)...............................................19*

27. *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care,*

*Inc., 190 F.3 ed. 1156, 1160 (10th Cir. 1999)................................................26*

28. World-Wide Volkswagen Corp. v. Woodson,. at 444 U. S. 292...........................23,24

29. *Young v. Ridley, 309 F. Supp. 1308, 1311 (D.D.C.1970).....................................29*

## ABLE OF AUTHORITIES

**Federal Statutes:**

1. Title 28 U.S.C. Section 1331: Diversity Jurisdiction...................................................1

2. Title 28 U.S.C Sec.1391 (a) (1)..........................................................................16

3. 28 U.S.C...Sec.l391 (a) (1).................................................................................20

## UNITED STATES CONSTITUTION

**4. Fifth Amendment to the U.S. Constitution and Fourteenth**

**Amendment (" Due Process and Equal Protection under the Law.")**......................30

## Federal Rules of Civil Procedure:

5. SUMMARY JUDGMENT Fed. R. Civ. P. Rule 56...............................................12

6. STANDARD OF REVIEW FOR A 12 (b) (6) MOTION TO DISMISS .................12,33

District of Columbia code:

7. D.C. Code §42-815(b),....................................................................................28

8. D.C. Code UCC 28:1-304................................................................................38

9. DC Code Sec. 42-818......................................................................................38

10. District of Columbia Code Section 42-186...................................................38,41

11. United States District Court Rule 16 (B)..........................................................36

## AUTHORITIES:

12. Restatement (Second) of Conflict of Laws §§ 36-37 (1971)...................................24

## JURISDICTION OF THE COURT

Jurisdiction of the Court is invoked pursuant to 28 U.S.C. Section 1331: Diversity Jurisdiction

without federal Question.

## ISSUESS BEFORE THE COURT

1. Whether Wells Fargo Bank N.A., Appellee (WFB) is entitled to attorneys' fees from

Appellant, ("Mrs. Walls ") for civil action brought in the Federal District Court for the Eastern

Division of Virginia?

2. Whether   (WFB) is entitled to attorneys' fees from Appellant ("   Mrs. Walls ") for civil

action brought in the Federal District Court for the Eastern Division of Virginia (District

Court) on June 18, 2012, from December 28, 2012 until and including  March 08, 2012?

3. Whether WFB breached the contract between Mrs. Walls and WFB by filing the lawsuit

 in the District Court rather than in the District of Columbia   when, by agreement, the

parties mutually selected the District's Forum and laws to governed any dispute deriving

under the contract?

4. Whether WFB was required to exhaust the non-judicial remedies under the contract and

the Laws of the District of Columbia as a condition prerequisite to filing a lawsuit.

## STATEMENT OF THE CASE

On November 4, 2005, Plaintiff Walls executed a Promissory Note with Wachovia Bank , herein

(WFB) for real property, 585 Columbia Road, NW Washington DC 20001; Square 3051, Lot

174,herein ("The Property").The principal of the Promissory Note, ("The Note ") herein, was

1

$600,000.00, at an annual interest rate of 6 .49%, with a default rate of 3%, repayment amount of $5,256.93 commencing on December 4, 2005 with a maturity date of November 5, 20010. Between November 04, 2005 and November 05, 2010, WFB initiated non-judicial foreclosure on the property. The sale divested Mrs. Walls of all legal and equitable rights and obligations to the property. The purchaser failed to ratify the sale. Six months later, WFB voluntarily, without Mrs. Wall's request, surrendered the property to Mrs. Walls without a new contract. Much of the delinquent taxes and mortgage payments occurred during the six month of divesture. The verbal agreement between Mrs. Walls and WFB was that Mrs. Walls would improve the property to produce rental income and from that income WFB would receive mortgage payments. No new or alternate Debt Instruments were executed at that time.

On June 18, 2012 WBF filed in the United States District Court for the Virginia, Alexandria Division, a Civil Complaint-diversity action- against Mrs. Walls for default on the Promissory Note (Note) and the Deed of Trust (DOT).The Complaint sought judgment in the amount of $805,131.00., plus attorney's fees and cost on the unpaid principal of $600,000.00 at a rate of 9.49%.

The District court issued several orders against Pro se Defendant Appellant Walls. Among the orders are two appealable orders-judgments issued by the District Court: summary judgment in favor of WFB, issued on December 28, 2012; JA206-210, with judgment entered upon said order. See JA 211; and order of March 04, 2013 JA373, with a supporting memorandum, JA354-372.

2

Also see Orders of 01/16/2013, JA318 and 319-320 which affirmed the order of December 28, 2012. JA 206 to 210 and Judgment, JA211. Timely appeals were taken.  See JA20 6 and JA211. December 28, 2012 order was appealed on (01/15/2013; JA312-317) and the order of 3/04/13 was appealed on (03/15/2013. See JA374.)

## STATEMENT OF THE FACTS

Wells Fargo and Mrs. Walls agreed under the Promissory Note, JA11 and Deed of Trust and Assignment of Rent, JA 17 that the laws of the District of Columbia would apply to any dispute deriving from the Promissory Note and the Deed of Trust ("Debt Instruments"). The Debt Instruments set forth non-judicial procedures for all the remedies that would normally be sought judicially. The laws of the District of Columbia governing disposition of real property provide a Non-judicial foreclosure process with the statutory intent to avoid litigation cost. The agreement required exhaustion of the combination of the Debt Instruments' provisions and the District of Columbia Laws; non-judicial collection action and non-judicial foreclosure action. Both debt Instruments and the Statutory Provisions mandated the non-judicial process would precede any judicial action on the Debt Instruments that secure the District of Columbia Real Property. On June 18, 2012 WFB filed a lawsuit against Mrs. Walls for default on the Debt Instruments. The complaint was filed under diversity jurisdiction with the U.S. District Court for Virginia rather than in the District of Columbia. The Complaint sought monetary judgment, attorney's fees and cost, for the satisfaction of the Debt Instruments. Every remedy sought in the lawsuit was available under the provisions of the Debt Instruments and laws of the District of Columbia which provided the least expensive non-judicial process for the parties to avoid

3

unnecessary cost and fees and to provide the Note holder with means for quick procession of the property .

WFB, after filing the lawsuit on June 18, 2012 in the Virginia Federal District Court, filed non-judicial foreclosure sale action against Mrs. Walls in the District of Columbia. The foreclosure auction sale of the property was consummated on September 18, 2012, for $575,000. The combination of the amount of money sought by WFB on the Debt Instruments in the Virginia Action and the amount on the Payoff Statement to protect the property from auction sale was substantial; over one million dollars on a $600,000 debt. Mrs. Walls could not pay the amounts to prevent foreclosure sale of the property. The Virginia District Court entered two appealable judgment-orders. Both of the orders awarded attorneys and judgment for the alleged principal of the Debt Instruments with interest and cost. Both orders were timely appealed to this court. The Orders are at JA373, entered 03/04/13, awarding WFB the ("total cost of $251,264.08 consisting of $99,094 in attorneys' fees and $152,529.89 in cost ") , referring (Dkt.49) which is found at JA232 (1-11-13), which is WFB's Motion for Attorney's Fees. The order was accompanied by the Court's Memorandum. See JA354. See the Court's Summary Judgment Order, JA206 issued December 28, 2012. The content of the orders will be discussed separately.

## SUMMARY OF ARGUMENT

### APPLICABLE LAWS AND JURISDICTION CONTROL JUDICIAL CONTRARY DECISION

For mutual consideration, the parties selected the District of Columbia laws and forum for contractual breach and dispute under the Debt Instruments; the Deed of Trust and the Promissory Note. The Debt Instrument(s) is the contract between WFB and Mrs. Walls. WFB's

4

decision to file the lawsuit in the District Court in Virginia rather than the District of Columbia

was an act of bad faith, a breach of the contract and violation of District of Columbia Implied

Covenant of good faith and fair dealing. The contract required WFB to exhaust the remedies in

the contract and the District of Columbia non-judicial foreclosure laws before filing a lawsuit on

the Debt instruments that secured the real property. Therefore, any attorneys' fees claims

made by WFB for hours exhausted in the Virginia District Court action must be denied. All

remedies sought by WFB in the Virginia District Court action were available to WFB non-

judicially. All issues raised in the Virginia lawsuit were already conceded by Mrs. Walls. The

lawsuit was not necessary. The lawsuit was initiated for two purposes: (1) to create fees and

cost; (2) and to destroy Mrs. Walls' financial ability to save the property from foreclosure sale.

WFB planned the Foreclosure Sale of September 18, 2012 in advance of the June 18, 2012 Civil

Action.

The non-judicial remedies available to WFB are: ENFORCEMENT OF THE COLLECTION:

(a) "Waiver of Grantor's Rights. To the fullest extent permitted by law, Grantor waives the
benefit of all laws now existing or that hereafter may be enacted providing for (i) any
appraisement before sale of any portion of the Property, (ii) in any way extending to time for
the enforcement of the collection of the Note or the debt evidenced thereby or any other
Obligations, and any rights to hearing prior to the exercise by Bank of any right, powers, or
remedy herein provided to the Bank." See JA17 (Deed of Trust) ("DT").

ACCELERATION OF THE DEBT:

(a) "To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time Insist

upon, plead, claim or seek to take the benefit or advantage of any law now or hereafter in force

providing for any exemption (including homestead exemption), appraisement valuation, stay,

extension or redemption, and Grantor for themselves and their respective heirs, devisees, representatives, successors and assigns, and for any and all persons claiming any interest in the Property, to the extent permitted by law, hereby waive and release all rights of valuation, appraisement, redemption, stay of execution, the benefit of all exemption laws, notice of election to mature or declare due the whole of the secured indebtedness and marshaling in the event of foreclosure of the liens hereby created. Grantor further waives any and all notices including, without limitation, notice of Intention to accelerate and of acceleration of the Obligations." JA17, 1st paragraph. ("DOT")

<u>ATTORNEYS' FEES AVAILABLE WITHOUT LITIGATION</u>

(c) Reasonable Attorney Fees: "Grantor agreed to hold the Bank harmless for any reasonable attorney fees. "Indemnification: Grantor shall protect, Indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages, penalties, fines, causes of action, costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) (collectively, "Damages') Imposed upon, incurred by or asserted or assessed against Bank on account of or in connection with (i)." JA-17, 3rd paragraph. ("DOT")

"<u>ATTORNEYS' FEES AND OTHER COLLECTION COST.</u> Borrower shall pay all of Bank's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals' attorneys' and expert's fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceedings." See Promissory Note at JA11.

6

<u>The Court's Quotes from the Deed of Trust:</u>

Not quoted is the following: "However, Grantor's indemnity shall not apply to any negligent or intentional act of Bank which takes place after foreclosure or satisfaction of this Deed of Trust..."

 JA17. Also see the "Waiver of Grantor's rights" under which all rights are waived as to the non-judicial collection process.JA8.

"<u>INDEMNIFICATION</u>.  Grantor shall protect, indemnify and save harmless Bank from and against all losses, liabilities, obligations, claims, damages. Penalties, (including, without limitation, reasonable attorney's fees and expenses) (collectively, (" Damages") imposed upon, incurred by or assessed against Bank on account of or alleged failure of Grantor to comply with any of the terms of, or the inaccuracy or breach of any representation in, the Loan Document;..." JA373. Court's order of March 04, 2013.

<u>THE ASSIGNMENT OF RENT REMEDY WAS NEVER EXERCISED BY WFB</u>

(d ) Assignment of Rents: "Grantor hereby absolutely assigns and transfers to Bank all the leases, rents, issues and profits of the Property (collectively "Rents"). Although this assignment is effective immediately, so long as no Default exists. Bank gives to and confers upon Grantor the privilege under a revocable license to collect as they Become due, but not prior to accrual, the Rents and to demand, receive and enforce payment, give receipts, releases and satisfactions, and sue in the name of Grantor for all such Rents. Grantor represents there has been no prior assignment of leases or Rents, and agrees not to further assign such leases or Rents." JA17. ("DOT")

7

## BANK'S REMEDIES UPON OCCURRENCE OF DEFAULT

(E ). "Upon any occurrence of Default. The license granted to the Grantor herein shall be automatically revoked without further notice to or demand upon Grantor, and Bank shall have the right in its discretion, without notice, by agent or by receiver appointed by a court, and without regard to the adequacy of any security for the Obligations, (i) to enter upon and take possession of the Property, (a) notify tenants, subtenants and any property manager to pay Rents to Bank or its designee , and upon receipt of such notice such persons are authorized and directed to make payment as specified in the notice and disregard any contrary direction or instruction by Grantor, and (iii) in its own name, sue for or otherwise collect Rents, including those past due, and apply Rents, less cost and expenses of operation and collection, including attorneys' fees, to the Obligations in such order and manner as Bank may determine or as otherwise provide for herein. Bank's exercises of any one or more of the foregoing right shall not cure or waive any Default or notice of Default hereunder" JA17. ("DOT")

(F). Bank Remedies upon Default: "Remedies of Bank on Default   are available, without

limitation , (i) , acceleration of the maturity of all payments and obligation,      (ii) ...take

immediate possession of the Property ..and manage, control or lease the same to such persons and at such rental as it may deem proper and collect and apply rents to the payment of : (a) the Obligations, together with all costs and attorney's fees ; (b) all impositions and any other levies, (c ) the cost of all alterations, repairs, replacements and expenses incident to taking and retaining possession of the Property and management and operation thereof; all in such order or priority as Bank in its sole discretion may determine. The taking of possession shall not

8

prevent concurrent or later processing for the foreclosure sale of the Property: (iii) Bank may apply to any court of competent jurisdiction for the appointment of a receiver for all purposes including, without limitation, to manage and operate the Property or any part thereof, and to apply the Rent therefrom as hereinabove provided. In the event of such application, Grantor consents to the appointment of a receiver, and agrees that a receiver may be appointed without notice to Grantor,..; (iv) Upon application of Bank, Trustee shall sell the Property and pay the proceeds of sale according to the following terms and conditions: (a) Trustee shall foreclose upon this Deed of Trust and sell the Property, or any part or the Property, at public sale conducted according to applicable law (referred to as Trustee's Sale"); (b) Trustee shall provide such notice and shall advertise a Trustee's Sale in the manner required by applicable law; (c) Trustee shall conduct additional Trustee's Sales as may be required until all of the Property Is sold or the Obligations are satisfied; (d) Trustee, may receive bids at Trustee's Sale from the Bank and may accept from Bank as successful bidder, credit against the Obligations as payment of any portion of the purchase price; (e) Trustee may receive a reasonable fee for Trustee's services hereunder, not to exceed the maximum fee allowed by applicable law; and Trustee shall apply the proceeds of Trustee's Sale, first to any permitted Trustee's fee, second to expenses of foreclosure and sale, third to the Obligations, and any remaining proceeds as required by law; ..Bank may elect to foreclose upon any Property that is fixtures under law applicable to foreclosure of interests in real estate or law applicable to personal property. JA17 ("DOT").

9

## MISCELLANEOUS PROVISION:

(R ). "Miscellaneous Provisions. Grantor agrees to the following; (i) All remedies available to Bank with respect to this Deed of Trust or available at law or in equity shall be cumulative and may be pursued concurrently or successively. No delay by Bank in exercising any remedy shall operate as a waiver of that remedy or of any Default. Any payment by Bank or acceptance by Bank of any partial payment shall not constitute a waiver by Bank of any Default..." JA17.("DOT")

## SELECTION OF DISTRICT OF COLUMBIA COURTS AND LAWS.

(h) Selection of Applicable Law and Jurisdiction "The Deed of Trust shall be governed by and construed under the laws of the jurisdiction where this Deed of Trust is recorded: (x) Grantor by execution and Bank by acceptance of this Deed of Trust agree to be bound by the terms and provisions hereof). FINAL AGREEMENT. This Agreement and the other Documents represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent oral agreements of the parties. There are no unwritten and oral agreements between the parties" JA17. ("DOT")

(I) (" Applicable Law; Conflict Between Documents. "The Note and , unless otherwise provided in any other Document, the other Loan Documents shall be governed by and construed under the laws of the state in Bank's address on the first page hereof without regard to the state's conflict of law principles. If the terms of this Note should conflict with the terms of any loan agreement or any commitment letter that survives closing, the terms of this Note shall control" ) See Promissory Note at JA11.

10

FIRST PAGE OF THE PROMISSORY NOTE: AJ 11. (II) Wachovia Bank National

Association 1425 K Street NW Washington, DC 20005 (Hereinafter referred to as the Bank)

20.  THERE ARE CONSISTENT PROVISIONS IN THE DEED OF TRUST AND

PROMISSORY NOTE AS TO CHOICE AND APPLICABLE LAWS AND JURISDICTION

*"This Deed of Trust shall be governed by and construed under the laws of the jurisdiction where*

*this Deed of Trust is recorded: (x) Grantor by execution and Bank by acceptance of this Deed of*

*Trust agree to be bound by the terms and provision thereof"* (See Deed of Trust ,JA17 PG#9. )

The Deed of Trust was executed in the District of Columbia by the parties, Deed of Trust

document (DOT) at page 9 as was the Promissory Note at page one on November 4, 2005. The

real property is located in the District of Columbia. A District of Columbia Notary confirmed the

execution the Debt Instruments; namely Maxine Hall Mowert, Notary Public of the District of

Columbia. See JA17, pg#9. The Contract-Deed of Trust was recorded in the District of Columbia

as stated in the Complaint. ("See JA 9; paragraph 10- WFB's Complaint") Mrs. Walls waived her

rights to a hearing for relief upon default on the mortgage. See Waiver of Grantor's Rights pg#5

and #6, JA17. The Bank, WFB maintained the right to activate the Acceleration Clause upon Ms.

Walls' default leaving her with no rights to contest the same. She also waived her rights to

contest the collection of Attorney's fees in the non-judicial collection process.   Ms. Walls

virtually gave the Bank card blank authority to exercise unlimited non-judicial rights to secure

the Bank's financial interest upon default.    (See Remedies of Bank on Default See DOT, JA

17.pg#6, 7, 8 and 9.)

STANDARD OF REVIEW FOR SUMMARY JUDGMENT Fed. R. Civ. P. Rule 56

Before ruling on a motion for summary judgment, the trial court's obligation is to read the evidence most favorably for the non-moving party to see if there is a "genuine issue of material fact" to be resolved. Only if there is none does the court then decide whether the movant deserves judgment as a matter of law. The material issue of each case is identified by substantive law. As the United States Supreme Court has explained, "(o)nly disputes over facts that might affect the outcome of the  suit under the governing law will properly preclude the entry of summary judgment." **Anderson v. Lobby, Inc.,** 477 U.S.248.106 S.C 2505, 01 L.E.2d 202.

## STANDARD OF REVIEW FOR A 12 (b) (6) MOTION TO DISMISS

The purpose of Rule 12 (b) (6) is to test the sufficiency of the pleading and not to resolve the contested surrounding facts, the merits of a claim, or the applicability of defense**." _Presley v. City of Charlottesville,_** 464 F.3d 480, 483 (4th Cir.2006). Under Rule 8 (a) (2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

The Court's Order of December 28, 2002 must be set aside for reasons stated herein. Summary Judgment must not be entered where there is a genuine issue of material fact**. Anderson v. Liberty Lobby, Inc.** 477 U.S.242.248.106 S.Ct. 2505.01 L.E. 2d 202.The Court must review the record in the light most favorable to the non-moving party. See **Bryant v. Bell Atl. Md. ,Inc.**;. 288 F 3d 124; 133 (4th Cir. 2003.), cited at JA206 Doc#39.pg#2. By admission prior to June 18, 2012, Mrs. Walls had declared default on the mortgage; debt instruments. The court concluded the same, JA206; and further, that the subject property was in foreclosure proceeding. The

12

court decided WFB's discovery request had not been answered by Mrs. Walls, when it had been answered. The Court used the decision as admission for summary judgment purposes. The Court concluded that Mrs. Walls failed to pay WFB on the Note upon demand, when in fact, Mrs. Walls had voluntarily offered payment on the Note.  See Walls letter of July 26, 2012 where she offered to tender $20,000 payment to WFB with an additional $15,000 in escrow for WFB. ("See Doc#29-1 11/08/12" at JA136. The Court used the conclusion for reasons to force payment by judgment. See JA206 pg#3.The Court concluded that Mrs. Walls had failed to pay attorneys' fees; and that the cumulative sum was  $672,349.94. ,plus attorneys' fees and cost is due WFB under the Debt Instruments. The issued Order states: *"ORDERED that plaintiff's Motion for Summary Judgment (DKT. No. 32)  (JA 156 )be granted given this disposition, plaintiffs Motion to Compel (Dkt. No.35) (JA 179) is moot and therefore DENIED" (JA 206.pg#4).*

The ORDER chose to exclude material facts that would have defeated the summary judgment motion. WFB's June 18, 2012 complaint was insufficient to support the issuance of summary judgment. On the Complaint, WFB sought and obtained summary judgment as to attorney's fees without a fees schedule or an amount certain.

The cause was filed in bad faith and constituted breach of the contract between the parties. WFB was bounded by the selection of forum, laws and non-judicial remedies as stated in both the Deed of Trust and the Promissory Note.

The parties were legally and equally bound by the terms of the contract with legal consequences for its breach. "One who signs a contract is bound by a contract which he has an

opportunity to read whether he does so or not" See *King v. Indus. Bank of Washington*, 747A.

2d 151, 155 (D.C.1984) at 155. The contract was knowingly and maliciously breached by WFB

for profit in the form of attorney's fees and cost. Mrs. Walls' counter claim alleged breach of

contract and disclosed the financial contradictions between the complaint's prayer for

judgment and the Payoff statement amount. See JA73.

*ORDER OF DEFAULT JUDGMENT ON JULY 25. 2012*: The Court Order, of July 25,

2012, demanded WFB to seek a default and default judgment against Mrs. Walls. JA31. Mrs.

Walls was not properly served. See Mrs. Wall's affidavit, JA43, and Mr. Walls' affidavits. JA 44.

## SEWER SERVICE OF PROCESS

WFB obtained a default and default judgment based on sewer service. WFB's Affidavit of

Service was false. The Summons and Complaint were not served upon Mrs. Walls and Mr. Walls

as claimed by Wells Fargo. See Affidavit of Service. JA28. The Complaint and Summons were not

(" Posted on the front door or other such entry as appears to be the main entrance"). Based on

the false affidavit, WFB REQUESTED (AN ENTRY OF DEFAULT. JA#33, (Doc 8. ). Based on the

alleged service, the court entered a default against Mrs. Walls. JA40, ( Doc# 9- 08/21/12-P 1 of

1 ID45). Mrs. and Mrs. Walls motion the court to vacate the default asserting the affidavit of

service false. SeeJA41, motion to vacate default; Mrs. Walls's Affidavit JA#43 and Mr. Walls's

affidavit JA44. Mrs. and Mr. Walls contested: "It appears that the false affidavit of Plaintiff is a

tactical move to bring the Defendant into the case. There have been no attempt on part of

Defendant to avoid service" (Doc.10 -10-1-3; 08/21/12 P# 1 of 2 ID 46) See JA41; see Walls'

motion to vacate default; JA43. See Walls' Affidavit; JA44 Hal Walls' Affidavit.

14

## ORDER -ENTRY OF DFAULT JA274-275 -Dated 07/25/12

The order deemed service proper when it was not. The Walls were never served. The order

deemed all elements for judgment were present in the complaint when they were not. The

complaint brought action on both the Note and the DOT. See JA17 and the Promissory Note at

JA11.

### *NO CONSIDERATION FOR PRO SE LITIGANT*: JUDICIAL ADVICE TO PLAINTIFF

The Court ordered WFB to file a motion for default and for default judgment with procedural

and legal guidance in specifying the applicable law. The ORDER was prejudicial to Mrs. Walls.

WFB acted as ordered. ("ORDERED that plaintiff immediately obtain a default from the Clerk

pursuant to Fed.R.Civ. P.55 (a) and it is further ORDERED that promptly after obtaining an entry

of default...")The enforcement words ("Immediately and promptly") imply a rush to judgments

without the necessary facts. WFB was legally advised and demanded by the Court to file under

Fed. R. Civ.P.55 (a). The ORDER left WFB without discretion. JA31. The Parties Consent to avoid

the default was always available prior to the Court's ORDER. JA46. A default is a selection to be

made by either party and should not be ordered by the Court with instruction to do so.

CONSENT ORDER of 08/31/2012 to set aside default: WFB prepared a consent order which was

granted by the court. The order set aside the default and granted Mrs. Walls until and including

September 07, 2012 to answer the complaint. JA46. This gave Mrs. Walls approximately Seven

Days to file a response. If service was deemed improper on 08/31/12, Mrs. Walls was entitled

to 20 days, from 08/31/12, to provide a response.

15

## CONCENT ORDER TO SET ASIDE DEFAULT

By Order of 09/05/2012, as to Mrs. Walls' motion to vacate the Default, WFB, was directed to file a response opposition. Email contact was permitted. A motion hearing was set for September 14, 2012. JA 47.

Motion for Order to Transfer: 09/07/2012 JA48 .On September 07, 2012 Mrs. Walls filed with the Court a motion for an order to transfer the cause from the Virginia Federal District Court to the District Court for the District of Columbia. JA48.The motion was not a responsive pleading as ordered by the Court on 08/31/2012. However, it was timely filed on 09/07/2012 as ordered. See JA47 for timely response and the motion. *See JA50-54 Walls Memo. , for Transfer of the Cause.* By law, a Defendant is entitled to file a dispositive motion in lieu of a responsive pleading. Judicial economy favors such pleading. Early disposition of the cause by way of pleading is favored by the Court. Mrs. Wall's memorandum in support of the Motion was extensive. The Cause could have been originally brought in the District of Columbia, the litigation forum of the parties contractual choosing as stated under JA50, pg#2. Venue was challenged as explained under Title 28 U.S.C Sec.1391 (a) (1). Mrs. Walls stated "Plaintiff has the obligation to institute the action in a permissible forum and thus bears the burden of establishing that venue is proper*." Freeman v. Fallin*, 254 F. Supp. 2d 52,56 (D.D.C. 2003). Here, Plaintiff (rely) relies on the provisions in support of venue in the Virginia Federal District Court- Title 28 U.S.C. Sec. 1391 (a) (3). Such reliance without basis is insufficient. The resident of Defendant, in the instant case, standing alone, is insufficient for venue. The contract between the parties was executed in the District of Columbia and the real property is located in the District of Columbia. Because the collateral property is located and situated in the District of

16

Columbia, the laws of the District of Columbia will govern any and all common, substantive and

procedural law issues and rights of the parties relative to the foreclosure process.

## HEARING ON MOTION TO TRANSFER SEPTEMBER 13, 2012

The District Court Judge held a hearing on September 13, 2012 on Mrs. Walls' motion to

transfer. Summary of the six pages Transcript is as follows: Mrs. Wall's residency in the State of

Virginia persuaded the court to deny the motion to transfer. See JA 65-70; Tr. At P 2, 1:21 to 25.

ABUSE OF A PRO- SE LITIGATN:   As to Mrs. Walls motion hearing to transfer the Cause to the

District of Columbia (MO JA354,) the court took judicial notice that Mrs. Walls, as a Pro Se

litigant, enjoyed relaxation of time limitations for responding to motions.

## Abuse of Discretion in concluding, without evidence, venue was proper:

The Court: "There is absolutely no argument you can possible make that this is an inconvenient

forum" JA67- TR: LI-8.

The conclusion was a rush to judgment and a denial of due process and equal protection of the

law. The court made the statement before making an inquiry of either party. The terms of the

Debt Instruments were not considered for the parties' selection of Venue and Choice of law and

jurisdiction. Why WFB chose the District Court in Virginia rather than that of the District of

Columbia was an inquiry the court never made. The court concluded the Attorney Harry T.

Spikes, SR. provided counsel to Mrs. Walls as to the Virginia Laws. Counsel was present for the

Courts' inquiry for clarity to dispel the erroneous assumptions. The Court accused Counsel of

("ghost practice") JA68; TR. 20-25, and refused Counsel the opportunity to explain that he only

gave legal advice to Mrs. Walls for the District of Columbia action and the Mr. Walls assisted his

17

wife, Mrs. Walls, in all respects to the property, as she, Mrs. Walls, admitted in court. JA 66 and JA68-TR L 7-8. The record reveals Mrs. Walls was intimidated by the Court. The intimidation was exacerbated by the Court's statement: ("You don't know where you signed the note,  JA69 L-12 21., and followed the statement with ("It makes no difference where it was signed"). The language used by the Court closed any possibility of the Court's consideration of the full content of the Debt Instruments' choice of law, jurisdiction and venue and the parties' mutual choice for the same. Throughout the process, the court denied Mrs. Walls the consideration due to a Litigant, Pro Se or not Pro se. Such was an abuse of discretion. Denial of the Motion to transfer was an abuse of discretion and violation of Mrs. Walls Due Process and Equal Protection rights under the U.S. Constitution- 5th and 14th Amendment.

By memorandum (Doc.17 -O9/12/12/ Pl-7 ID#70) WFB opposed Walls' motion to transfer. See Memo. , at JA 58. The Memorandum falsely represented that Mrs. Walls was not paying taxes. WFB set forth the standard legal requirements in opposing the motion. However, WFB was well aware that the requirements (legal authorities presented by WFB) were not controlling; the contractual agreement was controlling in the instant cause. The Parties had selected the District of Columbia and its laws for non-judicial and judicial resolution for contract and property related action and disputes. In detail, WFB made the following assertion but never really challenge Mrs. Walls' assertion that jurisdiction of the Virginia Court was lacking. WFB argue VENUE and omitted the contractual agreement for the selection of the District of Columbia Laws and non-judicial proceedings and remedies. At the time of WFB's opposition to Mrs. Walls' motion to transfer, September 12, 2012, the non-judicial foreclosure against the property was to take place within six days. Further, at that time, Mrs. Walls was current on the property taxes

18

and had offered payments and a payment plan to WFB's Vice President, Brian Werner, on

August 26, 2012, which WFB refused to accept. At Mrs. Walls's request, Brian Werner emailed

Mrs. Walls a payoff statement which exaggerated the amount owed with speculative cost and

attorney fees. See payoff statement JA134, (08-22-12.) Brian Werner presented several

affidavits in which neither one asserts that WFB sought payments from Mrs. Walls and she

refused. See Brian Werner's Affidavits JA63-64,158 and 230. At page four of the opposition,

WFB argued that Mrs. Walls' answer to the complaint should precede a decision on a motion to

transfer, Citing e.g. *YeGER V. Foster*, 406 P.2d 370 (Mon.1965); *Thompson v. Horrell*, 158 S.E

633 (N.C.1968), and asserted that Mrs. Walls show the nature of her defense. WFB knew,

continued litigation would defeat the motion to transfer. The assertion ignored the contractual

agreement between the parties selecting the District of Columbia for the choice of law, the

place for the application of the law as is the place where the property is located. WFB's

opposition to the transfer motion, Docl7, JA58 was filed on 09/12/12; the very next day,

September 13, 2012, the court issued an order denying Mrs. Walls' motion to transfer. (Order

9-13-13, JA65. )The order denied the motion without explanation and consideration of the

Contract between WFB and Mrs. Walls.

Civil Action had not been filed by Mrs. Walls against Wells Fargo on September 13, 2012, but

WFB had initiated the Non-Judicial Foreclosure process in the District of Columbia. The

foreclosure action and the Virginia Civil Action existed simultaneously. The Virginia action was

in its infancy. No prejudice would have visited WFB by the grant of the motion to transfer; yet,

as has been shown, substantial hardships and prejudice have visited Mrs. Walls due to the

denial of the motion.

PERTAINING TO VENUE -ONLY MRS. WALLS WAS INCONVENIENT

As an employee in the District of Columbia, Mrs. Walls travels there daily during the week. After DC Court matters, Mrs. Walls enjoys ten minute walk to her place of employment at E and 6th Street N.W. Washington, DC.

THE COMPLAINT: VENUE: BAD FAITH: The District of Columbia was the most convenient forum for all parties-and litigation. The law firm of Kutak Rock LLP is located in the District of Columbia at 1101 Connecticut Avenue, Suite 1101, Phone number, 202-828-2400, a ten minute subway ride to the DC Federal District Court. The firm's Richmond Virginia Office is a two hour drive to the Virginia Federal District Court. Mrs. Wall's employment is in the District of Columbia where the debt instruments were executed and the location of the subject property. WFB Counsel's trip from the Richmond Office to the District Court is expensive with a two and one half hour travel time in morning rush hours.

NO EXPLANATION FOR VENUE: WFB Complaint was factually deficient for venue under 28 U.S.C...Sec.l391 (a) (1) which requires Plaintiff to provide authority and facts for venue.

The required explanation for venue would have included disclosure of the selection of venue and laws by the parties and the close proximity of the Plaintiff's DC Firm to the DC Federal District Court. This would have been sufficient for the grant of Mrs. Walls' motion to transfer. WFB withheld the vital information from the Court. Pro se Plaintiff, Mrs. Walls, was unable to adequately make the required presentation. The non-disclosure by WFB was an act of bad faith.

20

<u>WFB'S COMPLAINT CONTAINES WILFUL AND KNOWN INACCURACIES AND OMISSIONS OF RELEVANT</u>
<u>MATERIAL FACTS</u>

The complaint reference the provisions of the Promissory Note as to Mrs. "Walls will pay all

cost of collection or any similar type of cost, attorney's fees and court cost upon default. See

Complaint, JA 9 at 9. The material omitted facts are that (1) WFB filed the complaint before

commencing the collection process ;( 2) the Debt Instruments, as stated by WFB required Mrs.

Walls to pay cost of collection. Omitted is the material fact that the Debt Instruments,

Promissory Note, provides non-judicial collection process. The complaint referenced the Deed

of Trust and Assignment of Rent and identifies the debt instruments as executed in the District

of Columbia. The omitted material Facts are (3) the Deed of Trust (DOT) provides WFB with

unfitted rights to collection non-judicially and deprives Mrs. Walls of the rights to protest or

resist the described means and methods of collection on her default on the mortgage

payments, and (4) that both debt instruments, the DOT and the Promissory note, by agreement

of the parties for financial considerations, selected the District of Columbia as the litigation

forum and the applicable choice of Laws of the District of Columbia. Had WFB explained the

four omissions of material facts to the Court at the September 13, 2012 motion to transfer

hearing, the Court would have granted Mrs. Walls Motion to transfer the cause to the District

of Columbia Federal District Court. Failure to do so was an act of Bad Faith by WFB.

COLLECTION PROCESS: WFB misleadingly asserted that it engaged in the collection process

to obtain the delinquency payments from Mrs. Walls. WFB asserted that "Barbranda Walls has

refused and failed to pay Wells Fargo the sum due." See JA2, complaint at paragraph 12, 13 and

14. The Collection process is set forth in DOT JA 17, Pgs. . .8-9 . WFB submitted to the court the

21

affidavit of WFB's Vice President Brian Werner to confirm that WFB sought to collect the delinquencies from Mrs. Walls and that Mrs. Walls refused and failed to pay WFB. The Warner's affidavit fails to substantiate the assertion. The Affidavit(s) disqualify because they are based on assumptions and opinion rather than facts based and personal knowledge.

## *WFB'S VICE PRESIDENT BRIAN WERNER'S AFFIDAVITS BRIAN WERNER'S*

### *09/12/12*

"On information and belief, Ms. Walls has received and continue to receive regular rental income from the multiple tenants that occupy the Property. The exact number of tenants and rental income generated by the Property is not known because Ms. Walls has refused to provide information regarding the amount of income she receives from the Property and she refuses to allow Wells Fargo to inspect the Property." See Werner's Affidavit. See JA64, Paragraphs 8.9 and 10.The Affidavit does not state the purpose for which it was presented. The affidavit simply states: (1)" I am fully competent to make this affidavit and have personal knowledge of the matters averted to herein." The statement is contradicted by the fact that the affidavit is based on belief. The affidavit omits the most important issue before the court; the agreement of the Parties for the selection of forum and laws of the District of Columbia and the fact that WFB had not sought the administrative remedies set forth in the Debt Instruments.

## EVEN WITHOUT THE AGREEMENT FOR SELECTION OF LAWS AND FORUM, THE DISTRICT OF COLUMBIA WAS THE PROPER FORUM FOR LITIGATION

Mrs. Walls consented to personal jurisdiction over her in the District of Columbia.

(1) All the Debt Instruments were executed in the District. The property is in the District. All of Mrs. Walls' legal and equitable defenses as to the District Property, with or without agreement,

22

are governed by the laws of the District. Litigation in Virginia *excluded all of* Mrs. Walls' rights and remedies under the contract and the laws of the District of Columbia. The Virginia Lawsuit frustrated the September 18, 2012 foreclosure on the property in the District. The combination of the excessive cost of two simultaneous actions on the same subject matter made it most difficult for Mrs. Walls to litigate in Virginia all issues relative to the District's property and at the same time fight the foreclosure process. The outcome uncertainty of the Virginia Lawsuit presented potential accumulation of debt that would be attached to the property notwithstanding the disposition of the foreclosure sale of the property.

## MRS. WALLS' VIRGINIA RESIDENCY WAS THE BASIS FOR THE EXERCISED OF JURISDICTION

WFB was aware of Mrs. Walls' Virginia residency when it executed the Contract and made the Judicial Process Selections. The Court rewrote the Contract to favor WFB basing In Personam Jurisdiction on Mrs. Walls' Virginia Residency.

The District Court's exercised personal jurisdiction for Diversity action without a federal question was unjust for Mrs. Walls. WFB had absolutely nothing to lose by adhering to the agreement by filing the Acton in the District of Columbia. The transfer would not have worked a hardship on WFB. WFB understood clearly that the Virginia Litigation would gravely disadvantage Mrs. Walls, as malicious intended, and the disadvantage would increase with the additional foreclosure action of September 18, 2012.

Justice" may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. ***World-Wide Volkswagen Corp. v. Woodson,*** supra, at 444 U. S.

23

292; see also Restatement (Second) of Conflict of Laws §§ 36-37 (1971). As we previously have noted, jurisdictional rules may not be employed in such a way as to make litigation "so gravely difficult and inconvenient" that a party unfairly is at a "severe disadvantage" in comparison to his opponent. See *Bremen v. Zapata Off-Shore Co.*, 407 U. S. 1, 407 U. S. 18 (1972) (re forum-selection provisions); *McGee v. International Life Insurance Co.*, at 355 U. S. 223-224.

District of Columbia Federal District Court favors subject matter and personal jurisdiction over parties who execute the contract in the District under which a breach of contract claim is brought. See D.C Federal District Court Memorandum Opinion; *Stacey Eden Blau v. Grzegorz Lukasz Nowicki* CA No. 10-0024 (ESH) at p#2 foot note *1. Citing *Burger King Corp. v. Rudzewicz*, 417 U.S. 462n.l4 (1985), in stating that "As such, the Court is satisfied that the defendant has consented to the personal jurisdiction of the courts of the District of Columbia." Both WBF and Mrs. Walls "purposefully availed themselves of the privilege of conducting a business transaction in the District ("Forum") thereby invoking "the benefits and protections of its laws" *Hanson v. Denckla*, 357 U.S. 235, 532 (1958). By signing a promissory note in the District of Columbia to be enforced under the laws of the District of Columbia, ("WFB") "should reasonably anticipate bringing suit against Mrs. Walls , in the District of Columbia Courts. " See *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S.286, 297 (1980). Although the line of cases speaks to Defendant being sued under the states long arm statute requiring minimum contract for personal jurisdiction, they are apropos for the instant cause because all matters relative to the entire transaction are connected to the District with absolutely nothing to do with the State of Virginia.

## FEDERAL COURT'S JURISDICTION IN DIVERSITY CASES

DIVERSITY OF CITIZENSHIP: When an action is based on diversity, relevant state law controls *Erie R.R v. Tompkins,* 304 U.S. 64, 78 (1938). Therefore, the court is obligated to apply the local laws of the jurisdiction where action arose. For breach of contract action and tort action, the court, under the rule of lex loci delicti applies the substantive law of the state where the wrong occurred. See *Erie Ins. Exch. V. Heffernan,* 399 Md. 598, 620, 925 A. 2d 636, 648-49 (2007); for contract, the court ordinarily apply the law of the jurisdiction where the contract was made, under the principle of lex loci contractus. Id. At 618, 925 A. 2d at 648. A federal court sitting in diversity must apply the choice of law rules of the forum state to determine which state laws apply. *Orange St. Partners v. Arnold,* 179 F. 3d 656, 661 (9th Cir. 1999). Therefore, even if the parties had not agreed to the applicable jurisdiction and law, the District Court of Virginia would still be bounded under *Erie* to apply the laws of the District of Columbia. When the parties, as here, by way of binding contract, accented with the mandatory word ("Shall") expressed their choice of laws and jurisdiction, the court must give effect to the parties' intent so long as the application of the chosen law does not violate the fundamental public policy of the forum. *Me Grill v. Hill,* 31 Wash. App. 542, 644 P.2d 680, 683 (1982). The District Court's failure to honor the terms of the parties' agreement violated public policy.

## THE COURT'S ORDER PRESENTED NO JUSTIFICATION FOR DENYING MRS. WALLS MOTION TO TRASFER THE CAUSE TO THE DISTRICT OF COLUMBIA

The Federal courts are courts of limited jurisdiction and, as such, must have statutory or constitutional basis to exercise jurisdiction. *Montoya v. Chao,* 296 F. 3d 952, 955 (10th Cir. 2002). They draw their jurisdiction from the powers specifically granted by the Congress, and the Constitution, Article 111, Section 2, Clause 1. The party who seeks to invoke federal

jurisdiction bears the burden of establishing that such jurisdiction is proper. See ***Montoya*** , 296 F 3d at 966. Mere conclusory allegations of jurisdiction are not enough. ***United States ex rel. Hafter, D.O. v. Spectrum Emergency Care***, Inc., 190 F.3 ed. 1156, 1160 (10th Cir. 1999).When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.

The Court will take judicial notice that each American Citizen and Corporation(s) has a constitutional right to contract for mutually binding consideration and obligations with reasonable expectations that the same will be honored and enforced in accordance with the contract terms in a court of law. The Mandatory Terms of the Debt Instruments incorporated the Applicable Laws and the Statutory Provisions of the District of Columbia. The District Court never reviewed the Debt Instruments for contract interpretation and the parties' selection of laws, jurisdiction, forums and remedies. The District Court never questioned the deficiency of WFB's complaint for a determination of proper venue, subject matter jurisdiction or In Personam Jurisdiction. The court concluded that the issue of jurisdiction and transfer were absolutely closed to any argument Mrs. Walls could possibly present.

THE COURT DID NOT RELY ON THE LAWS OF THE DISTRCT OF COLUMBIA IN HER DECISIONS AND MEMORANDUMS AND JUDGMENT ORDERS

The application of the Laws of the District of Columbia would have yielded favorable results for Mrs. Walls. In fact, such application would have merited dismissal of the cause in the Virginia district Court.

26

In the District of Columbia, foreclosure is a non-judicial process, which means that foreclosure is accomplished without use of the courts, judicial review or oversight, completely eliminates the accumulation of attorneys' fees through lawsuit litigation. In the event of a mortgage delinquency, normally the lender or loan servicer will make several attempts to reach the borrower requesting that the overdue payments be made. If the loan continues to remain past due, then the lender or servicer may begin a foreclosure process to sell the property and attempt to recover unpaid loan amounts and other costs. In the District of Columbia, however, there does not seem to be any legal restriction on when the foreclosure process can be started against a delinquent borrower.

The property owner can pay the minimum amount required to cure the loan default, and thus stop the foreclosure. The amount required to cure foreclosure is specified under D.C. law (DC Sec § 42-815.01), and may include late fees, attorney fees, foreclosure costs, and all accruals. Here, Mrs. Walls was confronted with a million Dollar payoff amount to prevent the 09/18/2012 foreclosure due to the Virginia Lawsuit.

DEFICIENCY BALANCE-POST FORECLOSURE

On a non- judicial foreclosure sales, in the District of Columbia, the borrower can be sued for a deficiency. The statutory provisions of the District of Columbia and the Debt Instruments mandatorily require that any litigation or judicial claims against the Debt Instruments by the Note Holder- Trustee- Mortgagee, including claims of deficiency shall, only if necessary, be commenced after the foreclosure sale of the property. Such post foreclosure provisions benefit all parties. Mortgagee's litigation that precedes foreclosure Proceedings in a non-judicial foreclosure jurisdiction would completely defeat the purpose of the non- judicial foreclosure

27

statute. Such action would, as in the instant case, create unnecessary cost, expenses including attorney's fees; the exact events for which the statute was created to prevent, without question, any post non-judicial judgment proceeding includes calculated amount of deficiency; the loan principal, accrued interest and attorney fees less the amount credited.

1 Appellee-Wells Fargo created the exact scenario the Non-Judicial Foreclosure statute was created to prevent. Without the consummation of foreclosure sale of the property, attorney's fees cost and in particularly, any related deficiencies cannot be calculated with any degree of certainty. Any unnecessary pre- Non - Judicial Foreclosure cost through litigation was recognized by the framers of the statute to be financially detrimental not only to both parties, but to the potential flow of income into the District. Therefore, the statutory requirement indicates the lender bid at the foreclosure sale. Most importantly, non-judicial foreclosure negates judicial intervention and the initiation of a lawsuit where the mortgagor complies with the Banks' request to satisfy the deficiencies.

WFB seek attorneys' fees for the Virginia Litigation without first exercising the non-judicial collection auctions.

CART BEFORE THE HORSE

Lawsuit for attorney's fees, cost and expenses that preceded non-judicial Foreclosure is tantamount to placing the cart before the horse. In enacting the provision governing non-judicial foreclosures that is now codified as D.C. Code §42-815(b), Congress considered but decided against enactment of a more stringent provision which would have in every case required the party seeking foreclosure to secure a court order before foreclosure could be

made. The Committee felt that the delay which would inevitably result from a hearing and other procedural steps would unduly restrict legitimate financial institutions in transacting their business, and that a court foreclosure proceeding might restrict the flow of mortgage money into the District of Columbia. The notification requirement ultimately enacted, Congress concluded, would adequately protect the property owner. ***Young v. Ridley*, 309 F. Supp. 1308, 1311 (D.D.C.1970).**

The District of Columbia's Non-Judicial foreclosure statute is a public policy consideration. Further, pre-foreclosure sale litigation could well, as here, create a cost that could prevent the Mortgagor from saving the property. More important than that, the pre-litigation cost could well create a deficiency. Further, pre-litigation in a non-judicial foreclosure jurisdiction presuppose a deficiency or seek to make a deficiency a self-fulfilling prophecy.

THE CAUSE OF ACTION IN VIRGINIA WAS PREMATURE AND NOT RIPE FOR LITIGATION .The Doctrine of Ripeness required WFB to exhaust the administrative remedies, to which the parties mutually and mandatorily bounded themselves.

The cause was not ripe and was premature for litigation. The referenced cases and authorities that represent the exhaustion rule apply to Federal Subject Matter Jurisdiction of a Constitutional dominion. However, the same concept of ripeness applies equally to the instant diversity cause without Federal Question Jurisdiction because the District Court violated Mrs. Walls' constitutional rights to enforce the contract and deprived her of the 5th Amendment Due Process rights and her 14th Amended Dues Process and Equal Protection rights under the

29

United States Constitution. Mrs. Walls had a property right that was deprived protection by the Court.

The doctrines of ripeness and mootness speak to exhaustion of pre-litigation remedies, such as those listed in the Debt Instruments. Ripeness doctrine intersects with several related doctrines. In cases involving a challenge to government action, ripeness is closely related to exhaustion of administrative remedies and the Administrative Procedure Act requirement of a final agency action. The doctrine of ripeness asks the question whether there is a Case or controversy. Ripeness addresses when litigation may occur*." Lee v. Oregon* ,107 F.3d 1387 (9th Cir. 1997) citing *Abbott Laboratories v. Gardner*, 387 U.S. 138, 148 (1967). Mrs. Walls has a constitutional Right to Contract. The Court violated Mrs. Walls' Constitutional rights to Due Process and Equal Protection of the Law under the Fifth Amendment to the U.S. Constitution and Fourteenth Amendment (" Due Process and Equal Protection under the Law.") The Court ignored Mrs. Wall's rights under the contract between the parties as to their selection of forums and application of laws. Both the DOT and the Note set forth preconditions for filing a lawsuit. WFB must first initiate the collection process. See DOT , JA17 PG#5-6 .Mrs. Walls waved nearly all of her legal rights to the non-judicial provision in the contract. As a threshold matter, the District Court had a duty to determine whether WFB's claims demonstrate sufficient ripeness to establish a concrete case or controversy. WFB's complaint alleged it sought collection on the Debt Instruments at Mrs. Walls' refusal to comply but failed to substantiate the allegations with WFB's Vice President Brian Werner's Affidavits.

The September 13, 2012 hearing on Mrs. Walls' motion to transfer the cause from Virginia District Court to the District of Columbia and the September 14, 2012 related order did not address the ripeness issues. The proceedings addressed the issues of venue and jurisdiction; subject and In Personam. The issue of ripeness is properly before the court because it is interwoven with Mrs. Walls' motion to transfer.

Mrs. Walls stated an independent claim against WFB FOR BREACH OF CONTRACT. Admittedly, the claim's elements were deficient. However, District Court had an obligation to decide the Breach of Contract Claim either on standing or ripeness grounds as well as on Breach of Implied Good Faith Covenant grounds. The court summarily dismissed the breach of contract claim without engaging in contract interpretation.

Contract interpretation, examination of the DOT and the Note would have offered the Circuit Court an inadequate factual record for review and would revealed that the court's decision on the issues raised would amount to nothing more than issuing an advisory opinion. In the instant cause, the remedies to which the parties agreed constitute the requisite before adjudication. Because WFB did not seek the contractual remedies, there was nothing for the District Court to review.

Ripeness is a limitation on the power of the judiciary. It prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it. By clear and convincing evidence, every issue raised by WFB in the District Court had been contractually conceded by Mrs. Walls. The Court's Summary Judgment order of December 28, 2012 expresses as much.

31

Court Order: "According to the Complaint, Walls defaulted under the Promissory Note and failed to pay Wells Fargo the sum due after Wells Fargo demanded payment." ..." Given defendant's admission, there are no genuine issues of material fact in dispute. Walls have admitted that she executed the Promissory Note and the Deed of Trust. (Dkt.No 33). EX. B at p.14) .The Promissory Note specifies that default occurs upon "(t)he failure of timely payment or performance of the Obligations or Default under this Note or any other Loan Documents. ...Walls does not contest that she failed to make timely payments on the Note since June 2008" Summary Judgment Order of Dec. 28, 2012, JA207-208.

The question is: what was there for the District Court to Decide? All issues were contractually and personally conceded by Mrs. Walls with the available corresponding contractual remedies under the non-Judicial process under the parties chosen forum and laws, the District of Columbia, after exhaustion of the administrative contractual collection remedies. The Court had an obligation to declare whether a case is not prudentially ripe; that the case will be better decided later. This is so even if the case contains a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of the DOT and the Note.

The court was obligated to honor the parties' private rights to contract away certain judicial and procedural rights and to set prerequisites for the exercise of certain rights with corresponding time sequences. The recognition of the parties' contractual rights and contractual terms enhances the accuracy of their decisions and allow the court to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, issues that time may make easier or less controversial. The court's orders only

32

complicated the entire process. The foreclosure sale proceeds ("$575,000), were never credited to Mrs. Walls by the District Court's Orders.

## ORDER OF 09/13/2012 DIRECTING MRS. WALLS TO FILE A RESPONSIVE PLEADING TO PLAINTIFF'S COMPLAINT WITHIN 14 DAYS

The court, after denying the motion to transfer, ordered Mrs. Walls to file a responsive pleading within 14 days. JA71. On 09/27/2012 Mrs. Walls answered the Complaint denying all of Plaintiffs Claims, with a counterclaim which included a claim of Fraud and breach of contract. JA72. Paragraph ten of the answer displayed the disparity between the Payoff Statement amounts for foreclosure sale, the amount prayed for in the complaint and the increased difference of $200,000. On 10/18/2012 WFB filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. Rule 12 (b) (6) and to dismiss Mrs. Walls' Counterclaim. JA81. By Order dated 11/07/2012 JA90-91, the court set November 13, 2012 for Mrs. Wall's response to the motion to dismiss and WFB's reply brief on Novembers, 2012. Mrs. Walls' opposition was timely filed. On 11/08/ 2012 Mrs. Walls filed opposition in response to WFB's motion to dismiss JA92-94. The response in opposition again revealed the disparity in the amounts quoted in the complaint and the Payoff Statement: JA#94, it included the Civil Complaint filed against WFB in the District of Columbia and disclosed Mr. Walls assisting his wife, Mrs. Walls, in the litigation. JA68. By Order of 11/09/2012, Mrs. Walls and Mr. Wall's response to WFB's motion to dismiss was acknowledged. The court denied the request to hold the cause in abeyance pending the outcome of the District of Columbia cause of action, denied Mrs. Walls request for assistance of Mr. Walls in the pleadings and dismissed the response as a pleading, but filed it for informational purposes. See. JA149-150.

33

MRS. WALLS' COUNTERCLAIM

By Order of 11/20/2012, the court granted WFB's motion to dismiss Mrs. Walls' counter claim with prejudice. JA151 -155. The counter claim raised breach of contract issues and fraud and violation of good faith covenant by Appellee-Wells Fargo. The claims were lacking, but as previously stated, in view of the evidence available and the provisions of the Debt Instruments and the Non-Judicial Foreclosure requirements of the District of Columbia, the court was clothed with sufficient evidence of a contract breach and a claim of fraud against Appellee-Wells Fargo.

Contract Interpretation: The District of Columbia, Delaware, and Maryland all follow the law of objective interpretation of contracts: when contract language is unambiguous, the court must give effect to its plain meaning. See ***Rhone-Poulenc Basic Chems, Co. v. Am Motorists Ins.* Co., 616 A 2d. 1195-96 (Del.1992);** ***Bragdon v. Twenty-Five Twelve Assos. Ltd. P'ship.* 856 A. 2d 1165, 1170 (D.C. 2004***); Gen. Motors Acceptance Corp. v. Daniels**, 303 Md. 254, 492 A. 2d 1306, 1310 (1985)**. The Note and Deed of Trust set forth the contract terms applicable the parries to the contract. The party, who violates the terms of the contract, breaches the contract.

District of Columbia Court GOOD Faith COVERNANT: "This court has held that all contracts contain an implied duty of good faith and fair dealing, which means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."***Hais v. Smith* ,547 A.2d 986,987 (D.C. 1988**) (citation omitted). If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for

34

breach of the implied covenant of good faith and fair dealing." Id. at 987-988. This duty

prevents a party from evading the spirit of the contract, willfully rendering imperfect

performance or interfering with the other party's performance. See RESTATEMENT (SECOND)

OF CONTRACTS § 205 (1981).

The contract terms required the parties to litigate in the District of Columbia. WFB litigated in

Virginia, contrary to the terms of the contract. As a result of the breach, Mrs. Walls is harmed

with a monetary judgment. The Contract set forth remedies for non-judicial foreclosure as a

prerequisite to litigation for collection on the Debt Instruments. WFB breached the Contract by

first electing the judicial process prior to exhausting the non-judicial foreclosure remedies.

The Court's decision to deny the breach of contract claim must be reversed.

The court scheduled a pretrial conference for 1/17/2012 Doc.21-JA76 and a Proposed Discovery

plan JA77. Joint discovery plan was entered 10/23/2012 Doc.25 –JA83; Rule 16 (B) JA87;

Discovery order was issued Oct.24. 2012.

On 12/05/2012, WFB motion the court for summary judgment, JA156, with a supporting

brief, Doc.33 (12/05/12) which is omitted from the JA, *but attached to Appellant's Brief.*

Brian Werner's Affidavit supported the motion. JA159-160 along with Plaintiff's

Interrogatories to Mrs. Walls. JA162-177 and Motion to Compel Discovery. JA179 with

reference to several email communications, JA184-187 preceded by Alison Feehan's

Affidavit, JA182.  See WFB Brief, Attachment#126 to 132. On Dec. 28, 2012, by Order, the

court granted WFB's Dec. 05, 2012 motion for summary judgment. JA206-210.

The Court supported the Summary Judgment decision on the following: **(1) Walls non-response to the motion as of 12/27/2012.** On the same day the order was issued, Mrs. Walls filed a motion to extend discovery and to file a written opposition to Plaintiff's motion for Summary Judgment. JA212-213-(12/28/2012). On 12/31/12 Plaintiff filed a motion for reconsideration of the Summary Judgment order-memorandum of 12/28/2012. JA218-223. The court abused its discretion in denying the two motions. The court decided against oral argument by the parties. In view of Mrs. Walls' status as a Pre se litigant who had failed to respond to the dispositive motion, oral argument would have served the interest of justice. Again, there is an abuse of discretion. **(2)Non-response to WFB's Discovery Requests.** WFB alleged that Mrs. Walls had failed to answer the Interrogatories. WFB's efforts to obtain discovery from Mrs. Walls started on Dec.17,2012, JA184, , two days before the motion to compel was filed (12/20/12 ) . WFB, by Email, claimed efforts to contact Mrs. Walls had failed. JA183, Line #6. WFB's Counsel Contact by Email, Mrs. Walls' District of Columbia Counsel (H.T. Spikes), with WFB's discovery requests. H.T. Spikes, Sr., informed Mrs. Walls of WFB's discovery request. Mrs. Walls requested that WFB's Attorney permit answers to the discovery material on Monday, Dec. 24, 2012. JA186, the request was denied and Mrs. Walls requested an extension for that coming Thursday Dec.20, 2012 rather than Monday, Dec. 24, 2012. The request was declined. JA186-187. The record reveals that any good faith effort by WFB to communicate with Mrs. Walls for discovery response was after WFB had filed the Summary Judgment motion of 12/05/12. Evidence indicates that WFB never contact Mrs. Walls with any overdue discovery request.

36

<u>DISCOVERY RESPONSE BY MRS. WALLS:</u>

On 12/31/2012 Mrs. Walls filed with the court Notice of Discovery certifying that she had served WFB with ***answers*** to the outstanding discovery request, JA 224 and her efforts to obtain WFB's consent to the motion on December 24, 2012. See JA212-213 filed with the court in 12/28/2012.

<u>The Second Appealable order-</u> JA373-Memorandum Opinion- was issued on March 04, 2013(JA354-372).

<u>SPECIAL NOTE:</u> WFB objects to Mrs. Walls' introduction of Mrs. Walls' discovery response to WFB's Discovery Request. The relevance of the response(s) lies within the Court's Order of March 04, 2013, AJ 368,Line #9-end of page JA368; there the court reference Attorney Spikes efforts to secure discovery responses through relevant email transmissions between Spikes and Ms. Feehan, WFB's Attorney.

### ***ORDER OF JANUARY 31, 2013 JA338.***

On January 31, 2013, Attorney's Fees ordered to WFB, over Mrs. Walls written Opposition on 01/29/13 JA322-333, and further opposition at JA340-353.

### March 04, 2013 Order-Memorandum **JA354/ Order JA373.**

Memorandum Opinion- issued on March 04, 2013(JA354-372), order awarded attorneys' fees and cost; referenced previous orders such as the 12/28/2012 Summary Judgment Order awarding attorneys' Fees without a fees schedule and without an amount certain. The March 04, 2013 Order is not fact supported.

The Judgment should reverse for the following reasons.   The Memo. , Referenced WFB's Discovery Request.

Mrs. Walls 'Answers to WFB 's Discovery request were served on WFB's Attorney on 12/28/2012. See Attachment #276 to 299. ("Att#). Answer To Interrogatories ("ATI")P #5 raised a genuine issues of disputed fact as to the owed amount on the property ($866.613.00) relative to the payoff statement of August 22, 2012; the parties agreed choice of forum and application of law; and the provision of the DOT that required only ACTUAL COST to Mrs. Walls rather than Payoff Statement speculative charges. Whether WFB acted in Good Faith under D.C. Code UCC 28:1-304 and whether there was a violation of DC Code Sec. 42-818 relative to the Auction Commission amount of $50,000 on the Payoff Statement were disputed issues of material facts for summary judgment consideration of March 04, 2013. . See Attachment #283. Mrs. Walls asserted that the Virginia Lawsuit, after the sale of the property, transformed from one for judgment on the Promissory Note and Deed of Trust to one for any deficiency amount owed by Mrs. Walls. The ATI stated clearly: "The District of Columbia Code Section 42-186 provides means for which Wells Fargo may seek recovery of any claimed and just deficiency. " Mrs. Walls states" I, through my Husband, communicated to Wells Fargo's Vice President, Brian Werner, that we were financially able to pay the amount of $663,605.31 or a slightly increased amount as to interest" Attachment #284. Mrs. Walls questioned the sought after summary judgment amount of $672,349.04. Att#285. Mrs. Walls stated that Brian Werner provided a false Payoff Statement and such was an act of fraud and bad faith. See ATI 9&10, Attachment #287. Mrs. Walls explains her good faith dealing with WFB's Vice President, Mr. Brian Werner, at Attachment #296 that included her efforts to make payments, set aside money for payment of

the mortgage and upkeep of the property for income production. Mrs. Walls Interrogatories to WFB served on WFB on the 29th of December 2012. See Att# 300-317.

Genuine Issues of Disputed Facts clearly exist for the preclusion of Summary Judgment, contrary to WFB's contention at Attachment #127. As undisputed facts, WFB listed the following: (1) default by Mrs. Walls was conceded; contested was the amount owed; admitted by WFB. Att#127. The amount that was owed at the summary judgment stage was important because the property had been sold without credit to Mrs. Walls towards the requested summary judgment amount. (2) "The Note provides that Barbrabda Walls will pay all cost of collection or any similar type of cost, attorney's fees and court cost upon default." The statement by WFB is misleading and carries the erroneous assumption that WFB had engaged in collection process in compliance with the provisions of the Note and DOT agreement and the Non-Judicial Foreclosure process in the District of Columbia. The undisputed fats is; the lawsuit in Virginia was unnecessary, premature and in violation of the terms of the Debt Instruments. The Court never visited the terms of the Debt Instrument for the intent of the parties for summary judgment purposes.

Representation to the court is displayed at Att#129 (11) where WFB states: " As of November 7, 2012, 2012, the total amount of the principal and interest owing under the Note is $672,349.04 plus attorney's fees, expenses, costs, now existing or hereafter incurred and increased at 9.49% rate set forth in the Note from November 7, 2012, until paid. (Werner Affidavit. Ex. A) JA# 159-160. See ( Doc33-l -12/05/2012). JA157. Brian Werner's affidavit failed to list the purchase price of the property for an adjustment for credit to Mrs. Walls for summary judgment purposes, See

39

JA 231 #11. The Foreclosure Sale Notice of September 18, 2012 cited $778,955.65 as the

balance. See JA57. Between 9/18/2012 and 11/07/2012 the balance decreased. Brian Werner's

payoff statement, JA134, contradicts his Affidavit, JA159-160. The affidavit amount is $672,

349.04; the payoff amount as of August 22, 2012 is $868,613.00.JA#134. Which balance is

correct for summary judgment purposes? Here lie genuine issues of disputed facts that

precluded summary judgment. The fact that Mrs. Walls was behind on her payments for default

purposes require absolutely no judicial declaration; such was a matter of fact with the non-

judicial availability of all remedies sought by WFB in the VA litigation.

## MRS. WALLS' RESPONSE TO WFB'S DISCOVERY REQUEST BROUGHT CLARITY TO THE GENUINE

### ISSUES OF DISPUTED FACTS

The court accepted WFB's unanswered discovery request as admissions by Mrs. Walls.

See JA 162 to 177. (See Doc33-2, 12/05/12 P2 of 18 ID#192). Noted twice (JA189-204).

## MRS. WALLS WAS DENIED THE 14 (21) DAYS TO OPPOSE WEB'S MOTION TO COMPEL DISCOVERY BEFORE THE ISSUANCE OF THE DECEMBER 28, 2012 ORDER

WFB's Motion to Compel Discovery was filed with the Court by WFB 12/20/2012. (Doc 35 -

JA170-180) Eight days after WFB's motion to compel was filed, the court, while acknowledging

the pending motion, issued the Order of December 28, 2012 and mooted WFB's Motion to

Compel. The court issue the March 04, 2013 Order absent Mrs. Walls Discovery Response.

Mrs. Walls discovery response included information of genuine material disputed facts. See Att#283-284; Mrs. Walls examines Brian Werner's affidavits, address the issue of Good Faith Covenant. Most importantly, the deficiency amount after the sale of the property had not been calculated. After the sale of the property, the question became: Whether the Virginia Action was transformed from a claim on the Note and Deed of Trust to an action for collection of the deficiency.

"The District of Columbia Code Section 42-186 provides means for which Wells Fargo may seek recovery of any claimed and just deficiency." Mrs. Walls states" , through my Husband, communicated to Wells Fargo's Vice President, Brian Werner, that we were financially able to pay the amount of $663,605.31 or a slightly increased amount as to interest" Att#284. Mrs. Walls questioned the sought after summary judgment amount of $672,349.04. JA285. Mrs. Walls stated that Brian Werner provided a false Payoff Statement and such was an act of fraud and bad faith. See ATI 9&10, Att#286-7. Mrs. Walls explains her good faith dealing with WFB's Vice President, Mr. Brian Werner at Att#296 that included her efforts to make payments, set aside money for payment of the mortgage and upkeep of the property for income production. Mrs. Walls served Interrogatories upon WFB the 29th of December 2012.See Att#JA300-318. (Certificate of Service at Att#318)

*THERE WAS NO NEED FOR ADJUDICATION OF THE ALREADY CONCEDED FACTS*

Genuine Issues of Disputed Facts clearly exist for the preclusion of Summary Judgment, contrary to WFB's contention at Att#127. As undisputed facts, WFB listed the following: (1) default by Mrs. Walls was conceded; contested was the amount owed; admitted by WFB. The amount that was owed at the summary judgment stage was important because the property

41

had been sold without credit to Mrs. Walls towards the requested summary judgment amount. (2) "The Note provides that Barbrabda Walls will pay all cost of collection or any similar type of cost, attorney's fees and court cost upon default." The statement by WFB is misleading and carries the erroneous assumption that WFB had engaged in collection process in compliance with the provisions of the Note and DOT agreement and the Non-Judicial Foreclosure process in the District of Columbia. The undisputed fats is; the lawsuit in Virginia was unnecessary, premature and in violation of the terms of the Debt Instruments. The Court never visited the terms of the Debt Instrument for the intent of the parties for summary judgment purposes.

Representation to the court is displayed at Att#129 (11) where WFB states: " As of November 7, 2012, 2012, the total amount of the principal and interest owing under the Note is $672,349.04 plus attorney's fees, expenses, costs, now existing or hereafter incurred and increased at 9.49% rate set forth in the Note from November 7, 2012, until paid.(Werner Affidavit. Ex. A) (12/05/2012). JA1159. Brian Werner's affidavit failed to list the purchase price of the property for an adjustment for credit to Mrs. Walls for summary judgment purposes, See JA 230-231. The Foreclosure Sale Notice of September 18, 2012 cited $778,955.65 as the balance. See JA57-58. Between 9/18/2012 and 11/07/2012 the balance decreased. Brian Werner's payoff statement,JA134, contradicts the his Affidavit, JA159. The affidavit amount is $672, 349.04; the payoff amount as of August 22, 2012 is $868,613.00.JA#109. Which balance is correct for summary judgment purposes? Here lie genuine issues of disputed facts that precluded summary judgment. The fact that Mrs. Walls was behind on her payments for default purposes require absolutely no judicial declaration; such was a matter of fact with the non-judicial availability of all remedies sought by WFB in the VA litigation.

42

The MEMO of March 04, 2013 revisited Summary Judgment Order of December 28, 2012.

Mrs. Walls' attempt to provide pleadings to support an accurate record was critically viewed as an attempt to create a piece-meal record for appeal.

THE COURT: Therefore, the "Piece-meal Appeal" JA356 L-20, of the two orders, 12/28/2012 and 3/04/2013 was created by the Court, not Mrs. Walls. Mrs. Wall's motion for reconsideration gave the Court an opportunity to make the corrections to correspond to an amended Summary Judgment Order.

The Court's assertion that "Defendant's position on Plaintiffs request for attorneys' fees and cost is meritless... ("Walls's unnecessary litigious conduct has magnified the cost of litigation"JA363-364, must be viewed with strict serenity. WFB's failure to provide a fee schedule for the initial summary judgment order necessitated the second order relative to attorney's fee award.

The Court deemed Mrs. Walls' Counterclaim as (" Little more than frivolous delay tactics.") JA368. Delay of the judicial process was never Mrs. Wall's desire or intent.


DISCOVERY REQUIREMENT-SUMMARY JUDGMENT MOTION OF 12/05/2012

The Court concluded that Mrs. Walls delay in responding to WFB's Discovery (" simply run up attorneys' fees unnecessarily." JA368, Line 13. The Court misunderstood Mrs. Walls' efforts to satisfy the Discovery Request, The Court Ordered mooted WFB's motion to compel when Mrs. Walls had I already responded to the discovery request before the time had expired for Mrs. Walls to oppose the motion or otherwise respond to the discovery request. The 12/28/2012 Summary Judgment order was required to be based on the entire record. The Court asserts that it received response in opposition to the summary judgment motion and that Mrs. Walls' post summary judgment pleadings and stated the following:

43

(" she "d(id) not have enough information to oppose the summary judgment motion at this time" was insufficient reasonable explanation for her failure to file initial discovery disclosure or to respond in any respect to plaintiff's various discovery request" JA368.

## MRS.WALLS' PLEADING MADE THE COURT AWARE THAT THERE WAS INSUFFICIENT EFFIDANCE FOR THE AWARD OF ATTORNEY'S FEES AND THERE WAS NO ATTORNEY'S FEE SCHEDULE FROMWFB

The motion-memorandum reveals judicial errors and imperfections of the Order of 12/28/2012, and Brian Werner affidavits' omission of material facts. The ORDER of denial- 01/04/13- provided reconsideration for WFB; not for Mrs. Walls. Court Order of 01/04/13: JA225: "Although the Court does not intend to reconsider its decision to grant summary judgment in plaintiff's favor, and Walls's most recent pleading still fails to offer and reasonable explanation for her failure to timely file discovery disclosure or response to discovery request, the Court is concerned about the precise amount of the judgment against Walls in light of the sale of her property Walls' opposition to WFB's Motion for attorneys' fees at JA340 of 02/14/2013.There, Mrs. Walls emphasized her timely responses.  See certificate of service .(02/14/13- JA353. The opposition elaborates extensively on the insufficiency of the Court's 12/28/2012 Order. JA206 . Brian Werner's supplemental affidavit of 01/10/13 made it more apparent that the dollar amount was not ripe for summary judgment. At JA230-231. Werner states (" Wells Fargo has not received any proceeds from the Sale") of 9/18/2012. (9), a contradiction to previous affidavit. JA159-160. "As of November 7, 2012, the total amount due to Wells Fargo from Ms. Walls under the Note, is $672,349.04, which includes the unpaid principal balance, accrued and unpaid interest, and late charges..."JA230-231. Which of Brian Werner's affidavit is correct? Either way, a lawsuit was not necessary for the calculation of the amount owed under the Note.

44

With all things considered, why would the court refuse to modify an acknowledged deficient, unenforceable order absence a sum certain? Such refusal demonstrates extreme judicial bias towards Mrs. Walls. The Judicial Bias was detrimental for Mrs. Walls.

COURT; "Given the tortured litigation chronicled above, the Court ascertains no credibility to Walls's protest that Wells Fargo is responsible for unnecessarily expanding its attorneys' fees and cost" JA369.

Again, the statement exemplifies judicial bias, fighting words and a conclusion without impartial judicial analysis. The Court never analyzed (1) Debt Instruments for the non-judicial remedies or choice of law selected by the parties. (2) The fact that all issues decided by the court were conceded by Mrs. Walls prior to June 18, 2012 filings with the Court. (3) Declaratory Judgment would have quickly put the conceded issues to rest with minimum litigation. (4) The only issue before the court is Attorneys' fees and the accuracy of cost and expenses. (5) The fact that WFB violated the Contract by filing the action in Virginia and filing the action before seeking the available non-judicial remedies.

The Court's order continues to do three things; defend and represent WFB, and the two appealable orders. The Court indicated that she informed Mrs. Walls that( on 9/13/2012) "her motion to transfer this civil action was different from any foreclosure-related proceedings in the District of Columbia and involved the totally separate, discrete issues of whether the Promissory Note has been paid" JA369. The Court ignored the benefits of Mrs. Walls' pleading, the judicial limitations the Note and the DOT placed on the court. The Complaint seeks $804,131.00.The Payoff Amount is $866,613. To prevent foreclosure,  the payment of

$1,670,744, was to be paid on  09/18/2012 . The amount caused Mrs. Walls to lose the property.

GENERAL OBJECTIONS TO ATTORNEYS' FEES: Mrs. Walls' objections to the award of attorneys' fees is specific. The attorneys' fee award for pre-June 18, 2012 activities and litigation are impermissible and unenforceable.

All pre-June 18, 2012 fees and cost not identified on the Payoff statement of August 22, 2012, relative to the September 18, 2012 auction sale, are not collectable. Post 9/18, 12 non-judicial foreclosure cost and fees must be examined for their propriety under the District of Columbia laws.

STATUTE OF LIMITATIONS: WFBs claims for attorney fees for services rendered three years next to September 18, 2012 are untimely and barred by the District of Columbia three year statute of limitation, District of Columbia Code Section 12-301 (7). See *Richard A. Burgess v. Square* 3324 Hampshire Gardens Apartments, Inc., D.C. Court of Appeals No. 96-cv-117 (April 3, 1997,) at P# 4. Citing *Doolin v. Environmental Power Ltd.*, 360 A. 2d 493, 495 n.2 (D.C. 1976). The District of Columbia's laws apply to the cause. The parties' contract form the basis of the controversy *sub judice* is sufficient to satisfy the application of D.C. statute of limitations; the contract was made in the District, to be performed in the District, and by agreement, governed by District law. See *Johnson v. Long Beach Morta Loan Trust* 2001-4, 451 F. Supp. 2d 16, 31 (D.D.C. 2006.)

FEEHAN'S VERIFIED AFFIDAVIT REGARDING FEES AND COST JA235 at236

1. The fee of ($23, 695,) ($62,477.19) ($49,249.62) ($36,607.00) ($63,000.00) ($5,000.00) and $3,307.77) are uncollectable and barred by the District of Columbia Statute of Limitations.

Objection: The cost and expense, if permissible, must be attached to the principal of the Note

and must be conclusive as to the total amount of such fees. If Not, an explanation is required as

to whether said sum represents the auction sale of 09/18/2012. Further, there is no verification

by documentation of the amounts allegedly paid and the purpose. (Trustee's bill -unpaid fees

related to foreclosure and litigation $8,287.50 is accepted without objections if it represents

the sum total, inclusive of the Trustee's bill for the 9/18/2012 Auction and other trustee's bill.

Objection: The total sum of $251, 624.08 consist double billing for the same-simultaneous services. See

ORDER 03/04/13 JA373.


## CONCLUSION

RELIEF SOUGHT BY PRO SE, MRS. WALLS:    Mrs. Walls move the court to set aside the

District Court's Judgment - order of December 28, 2012 and March 4, 2013 and find the

following:

1. The Order awarding $251,624 attorneys' fees must set aside as sought in bad faith. **2.**
WFB is not entitled to the fees and cost related to the District court litigation, because

WFB breached the contract by filing the cause in the Virginia District Court in violation of

the terms of the contract, which expressly stated the selection of laws and forum was

the District of Columbia. The contract terms provided a process: the exhaustion of the

administrative remedies as a prerequisite a lawsuit. The facts reveal that the ONLY

reason WFB brought the cause was for the purpose of creating attorneys' fees and cost

which is a bad faith act. For enforcement of all related debts non-judicially, Mrs. Walls

waive all of her rights. Waiver of her rights to accelerate the Debt obviated the necessity

47

of litigation for that purpose and for the purpose of attorney's fees. Mrs. Walls was bound to indemnify WFB for non-judicial action under the contract and to secure payments on the debt. WFB needed only to enforce the Assignment of Rent clause in the contract. All the specified remedies available on occurrence of default excluded litigation for collections on the debt. Bank Remedies on default excluded litigation. Only after failure at the remedies was WFB entitled to seek judicial intervention. The judicial intervention was to take place in the District of Columbia by the agreement of the parties.

Prayer for relief: Mrs. Walls prays the fees and cost be set aside for a verifiable deficiency amount with credit of $575,000.

Oral Hearing requested:

/s/ Harry T. Spikes, Sr.

Harry T. Spikes, Sr.#02493
1703 New Jersey Ave N. W Washington, DC 20001
202 288-4175
Fax (301) 2486865
harryspikes@gmail.com

48

## CERTIFICATE OF COMPLIANCE

Counsel for Appellant, Barbranda Walls, certify as follows:

1. The brief has been prepared using 12 point New Roman, proportionally spaced serif tapeface.
2. Exclusive of cover page, corporate disclosure statement, table of content; table of citations; statement with respect to oral argument, and addendum containing ( Verdana)word ( per word count system 13,5530. I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions.

Harry T. Spikes, Sr.#02493

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Appellant's Brief was served upon opposing counsel by Regular Mail, postage prepaid and through the Circuit Court Electronic Filing system on this 25th day of July, 2013. Served: KUTAK ROCK LLP        Loc Pfeiffer (VSB No39632 Alison W. Feehan, VSB No.35225-1111 East Main Street ,Suite 800 Richmond, Virginia 23219- (804) 644-1700-Facsimile: (804) 783-6192 and Craig B. Young 1101 Connecticut Avenue  N.W., Suite 1000 Washington ,DC. 20036 (202) 828-2328

Harry T. Spikes, Sr.#02493
1703 New Jersey Ave N. W
Washington, DC 20001
202 288-4175
Fax (301) 2486865

*Counsel for Barbranda Walls*

49